HOOPER *v.* STATE.

Crim. 3826

Opinion delivered March 27, 1933.

*Gordon B. Carlton, Feazel & Steel* and *Ben Shaver,* for appellant.

*Hal L. Norwood,* Attorney General, and *Pat Mehaffy,* Assistant, for appellee.

KIRBY, J., (after stating the facts). It is insisted that the court erred in refusing to give requested instructions Nos. 2 and 6, in the admission of certain testimony, in

the refusal to discharge a panel of thirty special jurors; and that the testimony is insufficient to support the verdict, there being no testimony corroborating that of the accomplices.

Instruction No. 2 was sufficiently covered by the general instructions given calling attention particularly to a certain kind of testimony admitted about the facts, of which it was claimed the defendant had knowledge before the consummation of the robbery. The general instructions being correct, no error was committed in refusing to give this instruction, conceding, not deciding, that it was a correct declaration of law.

Instruction No. 6, on the question of corroboration of the testimony of accomplices, was fully covered by instruction No. 4, given by the court, and no error was committed in not repeating the instruction as No. 6. Trial courts are not required to give requested instructions which are fully covered in the court's charge. *Smith* v. *State,* 168 Ark. 253, 269 S. W. 995. See also *Middleton* v. *State,* 162 Ark. 535, 258 S. W. 995; *McClaskey* v. *State,* 168 Ark. 339, 270 S. W. 498; and *Bodner* v. *State,* 177 Ark. 424, 6 S. W. (2d) 550.

It is insisted that the court erred in refusing to dismiss a special panel of jurors selected by the sheriff on account of his prejudice against the defendant. The regular judge was disqualified in the Hooper cases, and Hon. Ben E. Isbell was selected to try them; and the court held that the sheriff was disqualified in serving jurors to try Hooper. Before this case was set for trial, and during the regular term, the trial judge ordered the sheriff to select 30 special jurors, and this case was subsequently set for trial, and it was to these 30 jurors that the defendant's motion to dismiss the panel went. Evidence was heard upon the motion which tended to show the sheriff's prejudice against the defendant, and also that this case was not set for trial at the time he selected the special panel of jurors. It will not be necessary to discuss the proof adduced on the part of the State in order to show that no prejudice resulted to the defendant by the use of these special jurors, for the reason that on the trial the defendant did not exhaust his peremptory

challenges, nor make any showing whatever that any particular person who served on the jury was prejudiced against him. The record reflects that he only exercised 16 challenges in all before the jury which tried the case was selected, and, not having exhausted his peremptory challenges, this constituted an implied admission that the jurors were unobjectionable, and he has no right to complain here. *York* v. *State,* 91 Ark. 582, 121 S. W. 1070; *Rogers* v. *State,* 133 Ark. 85, 201 S. W. 845; *Bowman* v. *State,* 93 Ark. 168, 129 S. W. 80.

It is next insisted that the court erred in admitting the testimony of Mrs. Hulse and Mrs. Mills, her daughter, to the effect that Biddy Hooper, another accomplice, brought Hulse some of the money obtained in the bank robbery after the robbery was committed and the robbers had left the State, the purpose of the conspiracy having been consummated. Although it is true that the acts and declarations of a conspirator are inadmissible against his co-conspirator after the accomplishment of the purpose of the conspiracy, such is not the case here. The purpose was to rob the bank and procure the money, and necessarily distribute it among those participating in the enterprise, and the conspiracy cannot be said to have ended so long as the money procured in the robbery had not been divided among the robbers. *Wiley* v. *State,* 92 Ark. 586-592, 124 S. W. 249.

This defendant was charged with the crime of accessory after the fact of the robbery, and it was not consummated as long as the defendant concealed the crime and protected the principals. In *State* v. *Gauther,* 231 Pac. (Ore.) 141, the Supreme Court of Oregon said: "The acts and conduct of one accomplice, during the pendency of the wrongful act, not only in its perpetration, but also in its subsequent concealment, are admissible against the other."

In *Miller* v. *State,* 88 Tex. Cr. R. 157, 225 S. W. 262, the Supreme Court of Texas, in passing upon the question, held contrary to appellant's contention, saying: "Under the evidence from the State's standpoint, the appellant and Corcoran were co-conspirators, and the object of the conspiracy was the acquisition of the property,

its sale, and the apportionment of the proceeds. Under this evidence, the conspiracy continued until its object was accomplished, and the acts and declarations of Corcoran in furtherance of the conspiracy were admissible, though in the absence of the appellant, and though made after the property had been taken. [Citing cases.] Even if the conspiracy had ended, the check was a part of the fruits of the crime, and its possession by the accomplice was admissible.''

The conspiracy being still in existence, the testimony of Mrs. Hulse and her daughter to the fact that Biddy Hooper brought the money from defendant, appellant, to Mr. Hulse's house, he being one of the accomplices, and what he said with reference thereto are admissible and could be proved.

It is finally contended that there is not sufficient testimony corroborating the statements of the accomplices to support the verdict. The court has concluded otherwise, however. Mrs. Burke testified that she brought her husband and Cooper, the two bank robbers, to Mr. Hooper's house, where they all spent the night before the robbery, and she went on back to Texas the next day, leaving them there. Hulse's wife and daughter testified that Biddy Hooper brought Hulse money from the defendant, it being in half dollars, quarters, dimes and nickels, the kind of money taken from the bank; and there was other corroborative testimony sufficient to warrant the jury in finding that it connected the defendant with the commission of the crime. *Middleton* v. *State, supra.*

We find no prejudicial error in the record, and the judgment is affirmed.