132

William Lewis.HICKS, Jr. *v.* STATE of Arkansas

CR 80-150                                    607 S.W. 2d 388

Supreme Court of Arkansas
Opinion delivered November 17, 1980

*E. Alvin Schay*, State Appellate Defender, by: *Jackson Jones*, Deputy Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Arnold M. Jochums*, Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Chief Justice. Appellant William Hicks and Eugene Morris, Jr., were charged with breaking and entering and theft of property. Both were charged as habitual offenders. They were tried jointly in a court trial, without a jury, on December 6, 1979, found guilty of the charges, found guilty of having been previously convicted of four or more felonies, and sentenced to imprisonment for five years, with credit for time served. Among other arguments advanced by Hicks is his contention that the evidence was insufficient to support his conviction for either breaking and entering or theft of property. We agree, reverse the judgment and dismiss the charge.

The offenses were alleged to have been committed on August 7, 1979, at the 7-11 Store at 4400 West 12th Street in Little Rock. The trial court admitted into evidence an unexpurgated confession of Eugene Morris, Jr. This statement was:

> Me, William Hicks and Brenda Harper went into the 7-11 store at 12th and Peyton to get some cigarettes. The dude went down and left the cash register open like he didn't care so I made my move and snatched ten dollars. Hicks was going to snatch him some but never did make his move.

Phillip Arnold, the store manager, testified that, between 7:00 and 8:00 a.m. on August 7, when he had a good many customers in the store, a black lady came in and bought a Coke. He said that she leaned over the counter behind which he stood, and pointed to something she wanted, causing him to turn his back to her and to the counter on which the cash register rested. He said that, while he had his

back turned, she would keep changing her mind about what she wanted and kept asking for something different. He said that two black males, the defendants, were with her. He stated that when he turned back around, the three left immediately. He testified that he then noticed that a packet of money (two one dollar bills and one five dollar bill) which had been placed in the cash register, as "bait money," was missing. According to him, this packet has been placed over a transmitter which served to trip a surveillance camera whenever the packet of money was removed. When he discovered that the money was missing, he called the police camera division by telephone. According to Arnold, $60 was missing from the register. Arnold viewed photographs developed from the camera and identified both defendants in them. He said that Hicks had returned to the store on August 9th and 10th and that the camera had been activated while Hicks was in the store on August 9th.

Appellant moved for a directed verdict of acquittal at the conclusion of the evidence on behalf of the state. The defense rested without offering any evidence and again moved for an acquittal. The trial judge found both defendants guilty.

Even with unexpurgated statement of the co-defendant, the evidence in this case gives rise to nothing more than a strong suspicion that Hicks was an accomplice of Morris and the woman. Even when the co-defendant's statement, qualifiedly admitted over appellant's objection, is considered, it does nothing to incriminate Hicks, other than to state Morris' own subjective evaluation of the intent of Hicks, and to say that the three, whom Arnold placed at the counter, had gone into the store together. No other testimony puts Hicks in the company of Morris and the woman until the store manager saw tham at the counter near the cash register. The photographs developed from the film taken from the surveillance camera show the woman leaning on the counter at all times. The first one shows Morris, standing next to the woman, reaching across the counter into the cash register drawer and Hicks standing behind the register, glancing toward the cash drawer and holding a piece of currency in this right hand. The next picture shows Morris, apparently passing something to the woman or into her purse, and Hicks

still looking at the cash drawer. The next photograph shows Hicks, still holding the paper money, turned toward Morris, looking toward Morris' hands which were above the counter but below Morris' waist. The state says that this picture "appears" to show Morris handing or having handed money to Hicks. We simply see nothing to justify such a conclusion. None of the photographs, taken at the rate of more than 20 per minute, show Morris passing any money to Hicks or justify any inference that he did. Morris is not identifiable in any of the remaining pictures introduced. Hicks, still holding the piece of paper money in his hand, moved into the position where Morris had previously stood next to the woman and then walked behind her and stood at the counter on her right side, away from the still open cash register. Morris definitely did not appear in the photographs showing Hicks walking behind the woman or standing on her right side. The money Hicks held in his hands appeared in every photograph in which he appears near the counter. Finally the photographs show Hicks walking away from the counter, leaving the woman still leaning over it. The last two photographs show the woman alone at the counter, still leaning over it. Neither Hicks nor Morris, nor any other person appears anywhere in these photographs. Although the store manager said that Morris and Hicks were with the woman, he apparently did not see any of the three until they were at the counter. There is actually no clear evidence that the three entered the store or left it togethere, except for the statement of Morris which should not have been considered by the trial judge as to Hicks. *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L.Ed. 2d 476 (1968); *Grooms* v. *State,* 251 Ark. 374, 472 S.W. 2d 724. The fact that the case was tried before a judge without a jury does not affect the rule. See *Hickey* v. *State*, 263 Ark. 809, 569 S.W. 2d 64.

The state contends that appellant and the unidentified female were accomplices and that appellant was liable for the actions of Morris because he was aiding Morris to commit a theft, relying upon Ark. Stat. Ann. § 41-303 (1) (b) (Repl. 1977). Under the section of the statute, Hicks would be an accomplice of either of the other two persons if, with the purpose of promoting or facilitating the commission of the offenses charged, he aided, agreed to aid, or attempted to aid

one or both of them in planning or committing the offenses or either of them.

We agree with the state that the guilt of an accomplice may be shown by circumstantial evidence. That evidence must, however do more than arouse suspicion; it must not leave the fact finder to speculation and conjecture alone. *Chaviers* v. *State*, 267 Ark. 6, 588 S.W. 2d 434. No one should be deprived of his liberty on mere suspicion or conjecture, however suspicious the circumstances may be. *Ravellette* v. *State*, 264 Ark. 344, 571 S.W. 2d 433.

The term accomplice does not embrace who had guilty knowledge or who is morally delinquent; it includes only one who takes or attempts to take some part, performs or attempts to perform some act or owes some legal duty to the victim of the crime to prevent its commission; and mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of some legal duty to act, concealment of knowledge or failure to inform officers of the law, is not sufficient to make an accomplice. *Wilson* v. *State*, 261 Ark. 820, 552 S.W. 2d 223; Ark. Stat. Ann. § 41-303 (Repl. 1977).

Not only must we reverse the judgment, the case must be dismissed. *Greene* v. *Massey*, 437 U.S. 19, 98 S. Ct. 2151, 57 L.Ed. 2d 15 (1978).

Reversed and dismissed.