Dan PADILLA *v.* STATE of Arkansas

CR 83-46                                   648 S.W.2d 797

Supreme Court of Arkansas
Opinion delivered April 18, 1983

*Donald R. Huffman,* Public Defender, for appellant.

*Steve Clark,* Atty. Gen., by: *Victra L. Fewell,* Asst. Atty. Gen., for appellee.

ROBERT A. DUDLEY, Justice. The issue in this case is whether the Interstate Agreement on Detainers Act, Ark. Stat. Ann. § 43-3201 (Repl. 1977), is applicable to a detainer based on a petition for revocation of probation which does not allege the commission of a subsequent offense. In 1980, appellant entered a plea of guilty to two felonies in Benton County and was placed on three years probation. Two months later a petition for revocation of his probation was filed alleging that appellant had not reported to his probation officer and had absconded. When appellant failed to appear at the hearing, a warrant was issued for his arrest. Subsequently, appellant was convicted on an unrelated charge in California and sentenced to two years in the California Department of Correction. A detainer, based on the outstanding Arkansas warrant, was then placed on

appellant in California. Appellant requested that a final disposition of the alleged probation violation promptly be made under the Interstate Agreement on Detainers Act [hereinafter referred to as Agreement]. The prosecuting attorney refused to honor appellant's request for extradition and trial. Eight months later appellant was returned to Arkansas for a hearing. He moved to dismiss the petition alleging that the Agreement requires the State to dispose of the complaint against him within 180 days of his request for final disposition. The trial court found that appellant had already been tried on the basic charge and that a hearing to revoke probation does not constitute trial of an "untried indictment, information or complaint" within the purview of the Agreement. We affirm. This case was certified to the Supreme Court by the Court of Appeals since it involves the construction of an Arkansas statute. Rule 29 (1) (c).

The Interstate Agreement on Detainers is an interstate compact to which both Arkansas and California are signatories. Article III provides that where a detainer is lodged against a prisoner based upon an untried indictment, information or complaint of another state, the prisoner, upon request, must be brought to trial on the untried charges within 180 days. Ark. Stat. Ann. § 43-3201 Art. III (a). Failure to accord a timely trial may mandate dismissal of the underlying charge. Art. III (d); *but see Young* v. *Mabry,* 471 F. Supp. 553 (E.D. Ark. 1978), aff'd, 596 F.2d 339 (8th Cir.), *cert, denied,* 444 U.S. 853 (1979). The compact is designed to standardize interstate rendition procedures in order to protect the inmate's right to speedy trial and reduce any uncertainties which might obstruct programs of prisoner treatment and rehabilitiation. Ark. Stat. Ann. § 43-3201 Art. I; *United States* v. *Mauro,* 436 U.S. 340 (1978); *Capalongo* v. *Howard,* 453 N.Y.S.2d 45 (N.Y. App. Div. 1982); *Camp* v. *United States,* 587 F.2d 397 (8th Cir. 1978).

Appellant contends that the State's petition to revoke his probation is an untried complaint within the scope and meaning of the Agreement. This is a case of first impression in Arkansas. Although some courts have held otherwise, *see Gaddy* v. *Turner,* 376 So.2d 1225 (Fla. App. 1979), we are persuaded by the reasoning of the courts that have held a

probation revocation proceeding not to involve "untried" matters within the purview of the Interstate Agreement on Detainers Act. *See e.g., Capalongo* v. *Howard, supra; People* v. *Jackson,* 626 P.2d 723 (Colo. Ct. App. 1981).

The Interstate Agreement on Detainers Act, Ark. Stat. Ann. § 43-3201 (Repl. 1977) by its express terms applies only to a detainer based on an untried indictment, information or complaint. Under the principle of *noscitur a sociis,* we interpret the terms "untried" and "complaint" as used in the Agreement as being synonymous with, or at least in the nature of, an untried "indictment" or "information." *Altus Cooperative Winery* v. *Morley,* 218 Ark. 492, 237 S.W.2d 481 (1951). A charge against a defendant does not remain "untried" after a defendant has pleaded guilty. A plea of guilty is itself a conviction; nothing remains but to give judgment and determine punishment. *Boykin* v. *Alabama,* 395 U.S. 238 (1969). As stated by the Tennessee Court of Criminal Appeals:

> The term "untried" refers to matters which can be brought to full trial. In a probation revocation proceeding, the trial has already been held, and the defendant convicted. In such a hearing, the defendant comes before the court in a completely different posture than he does at his trial before conviction.

*Blackwell* v. *State,* 546 S.W.2d 828 (Tenn. Crim. App. 1976); *see also Morrissey* v. *Brewer,* 408 U.S. 471 (1972); *Lockett* v. *State,* 271 Ark. 860, 611 S.W.2d 500 (1981).

The petition to revoke appellant's probation did not charge him with committing a crime prior to completion of his sentence. Since appellant had entered a plea of guilty on the charges underlying the original sentence of probation, there was nothing "untried" within the meaning of the statute. In our opinion, a charge of violation of probation, absent an allegation of the commission of an indictable offense, is not an "untried indictment, information, or complaint" within the scope and meaning of the Interstate Agreement on Detainers Act. The trial court was correct in refusing to dismiss the petition.

Affirmed.

SMITH, J., concurs.

PURTLE, J., dissents.

GEORGE ROSE SMITH, Justice, concurring. I agree with the court's opinion, but I also point out that Padilla's demand for a hearing in Arkansas is plainly a ruse by which he hopes to avoid a detainer that would certainly still exist even if the hearing were held. He is charged with not reporting to his probation officer in Arkansas and with absconding. His present petition itself proves the charge, for it is made from a prison in California after he committed an offense there. The hearing would be a five-minute formality at which Padilla's own petition would alone prove that his probation should be revoked. If Padilla wishes to pay the expenses involved in having an Arkansas police officer go to California, return Padilla to Arkansas for the useless hearing, and then return him to California, he is free to do so. But it would be absurd for this court to distort the plain meaning of the statute merely to enable Padilla to accomplish his scheme of holding the taxpayers of Arkansas for ransom.

JOHN I. PURTLE, Justice, dissenting. The majority opinion presents a very sad picture because in this case of first impression we had the opportunity to construe the statute in its plain and ordinary meaning without the liability of following cases which twist the interpretation. The majority misinterpretation appears to be by design. The concurring opinion would go even further in denying legislated rights to one who makes a legitimate demand for these rights. For the concurrence to state that this valid exercise of statutory rights is a "ruse" and a mere "formality" is to disregard the express intent of the Arkansas General Assembly. If we were to require the appellant to pay the expense of a hearing in Arkansas, we would, in effect, be denying him the right to such a hearing.

Act 705 of 1971 was enacted for the purpose of enabling Arkansas to participate in the "Interstate Agreement on Detainers." The Arkansas General Assembly found that

outstanding charges against prisoners and detainers based upon untried indictments, informations and complaints, as well as difficulties in securing speedy trials of prisoners incarcerated in other jurisdictions, produced uncertainties which obstructed programs of prisoner treatment and re-habilitation. A detainer placed against a prisoner in another state often subjects the prisoner to greater restrictions than the general prison population:

> Most parole boards consider a detainer as an adverse factor, and some will automatically deny parole if a detainer is pending. A detainer generally affects the convict's work assignments, barring him from trustee status, from working outside the prison walls, or even from participating in a prison industrial organization ... In addition, the uncertainty engendered by such an unresolved charge will usually cause the convict to take a negative attitude toward any rehabilitation program which the correction officials undertake.

"Convicts — The Right to a Speedy Trial and the New Detainer Statutes," 18 Rutgers L. Rev. 828 (1974).

The Arkansas General Assembly further explained their reasoning in Article I (Ark. Stat. Ann. § 43-3201 [Repl. 1977]):

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints, and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. The party states also find that proceedings with reference to such charges and detainers, when emanating from another jurisdiction, cannot properly be had in the absence of cooperative procedures.

It is clear from the wording of the act that the General Assembly intended to provide for the orderly disposition of such *"charges and detainers"* with the purpose of helping in treating and rehabilitating prisoners. With these views in mind provisions were made for requiring certain procedures to be followed by the states as well as the prisoners. The appellant in the present case followed proper procedure in requesting a speedy disposition of the charges after a detainer was placed on him in the California prison. The State of Arkansas refused to comply with the request although California offered to return appellant here for disposition of the charges. The purpose of the act being to aid in treatment and rehabilitation, it should be liberally construed in favor of the prisoner. The majority opinion construes the act strictly against the appellant in direct contravention of the express words of the act.

The majority maneuvers around the words "complaint" and "untried" in an attempt to justify its opinion. The acts speaks clearly of charges and detainers based upon indictment, information or complaint. However, it is evident to me that any detainer pending on a prisoner triggers the procedures and binds the states to comply with the agreement. A detainer based upon a complaint or petition to revoke a suspension or probation is just as much a detainer as one based upon an indictment or information. The contention that appellant's alleged probation violation was not "untried" is erroneous. The detainer was based upon an alleged act which was never proven; it was not based upon the original conviction. By ignoring the request of appellant for a speedy disposition of the charges against him the state will effectively let appellant serve his required time in another state under adverse conditions and then have the additional satisfaction of seeing appellant serve the most time possible in Arkansas. I submit that is not how the agreement on detainers was to work. The Florida Court of Appeals squarely addressed the same set of facts as those presented in this case, and applied the same language in the same act and stated in a well reasoned opinion:

> . . . we hold that the Interstate Agreement on Detainers Act which requires a hearing within 180 days of request

applies to detainers based on charges of probation violation.

*Gaddy* v. *Turner*, 376 So.2d 1225 (Fla. App. 1979).

The majority makes a valiant effort to turn the immense power of the state (and now the various states who have ratified this act) against the clearly expressed rights given specifically to this class of people. To unbalance the scales so, is to do disservice to our fundamental constitutional precepts to which I firmly adhere. A single right abridged chips away and the fundamental rights guaranteed all of us. I cannot be a part of such an erosion.