Leonard SPEARS, William CASSELL and Joseph L. BUMGARNER *v.* STATE of Arkansas

CR 83-20                                    660 S.W.2d 913

Supreme Court of Arkansas
Opinion delivered November 14, 1983
[Rehearing denied December 19, 1983.*]

*PURTLE, J., would grant rehearing.

578

*Kelley W. Webb,* for appellant Spears.

*Michael Everett,* for appellant Cassell.

*Larry R. Jennings,* for appellant Bumgarner.

*Steve Clark,* Atty. Gen., by: *Leslie M. Powell,* Asst. Atty. Gen., for appellee.

ROBERT H. DUDLEY, Justice. On April 2, 1979, Leonard Spears and William Cassell represented themselves as agents of the Federal Bureau of Investigation in order to gain entrance into the Poinsett County home of Frank and Margie Hyneman. Once inside they brandished pistols and robbed the Hynemans of a large amount of jewelry. Joseph Bumgarner and Bill Caplinger stood guard while the robbery took place. The four of them were charged, as habitual offenders, with aggravated robbery, burglary and conspiracy. Caplinger obtained a severance. Spears, Cassell and Bumgarner were each found guilty of aggravated robbery and burglary, but not of conspiracy. Each was sentenced to life imprisonment plus a fine of $15,000 for the aggravated robbery and thirty years imprisonment with another fine of $15,000 for the burglary. No reversible error is shown in the many arguments for reversal.

By the time of the trial, July 16, 1982, Frank Hyneman had died. Margie Hyneman testified that at the time of the crime, they lived on a large farm near Trumann. Her husband was the chairman of the board of the First National Bank of Poinsett County and was accustomed to interviews by agents of the Federal Bureau of Investigation because a bank employee had recently embezzled funds. She testified that at about 6:30 p.m. on April 2, 1979, two men knocked on the front door and identified themselves to the servant as F.B.I. agents. Upon entering, they pulled out handguns and stated that they wanted the Hynemans' jewelry. Margie identified appellants Spears and Cassell as the two robbers. She stated they took Frank's wallet, which contained be-

tween $2,000 and $2,300 in cash and his Rolex watch with a diamond bezel and a diamond base with numerals. They took her eight carat solitaire diamond ring, her ring with a cluster of diamonds centered around a three carat diamond, her ring with an aquamarine stone circled by twenty diamonds and her drop necklace made from a group of diamonds. After taking the jewelry appellant Cassell opened an attache case which contained chains, gags, two-way radios and padlocks. The chains and padlocks were used to chain the Hynemans and their servant, Neelon Smith, to a refrigerator before appellants Spears and Cassell departed.

Patti Bumgarner, who was ruled to be a co-conspirator and an accomplice to the robbery and burglary as a matter of law, testified that Danny Owens, a night club owner from Memphis, told defendant Caplinger about the Hynemans' jewelry, that he had a purchaser for the eight carat solitaire diamond ring, and that he wanted defendant Caplinger to obtain that ring along with the other jewelry. Caplinger, in turn, contacted Patti's husband, appellant Joe Bumgarner, and asked him to obtain the jewelry. She testified that, in late 1978, a man from Illinois named Michael Anderson came to the Bumgarner residence, which was just outside Harrisburg, to visit Joe Bumgarner.

Patti stated that on March 9, 1979, the three appellants and defendant Caplinger, who was granted a severance, met at her home and discussed Danny Owens' request that they obtain the jewelry. Her testimony is abstracted as follows:

> They were all discussing it. They discussed several ways of doing it, but they finally decided because there had been a deal over the Bank of Trumann with a guy named Brewer, they felt that if they went as FBI, then the Hynemans wouldn't think anything about it because it was an investigation into what Brewer had done. About a week before the real robbery they went through the ropes to figure out the robbery. Jeep Spears and Bill Cassell went out in Jaylene Parker's car and they knocked on the door. Joe was in our truck and Bill was in his truck. One was at Weona and another one at Payneway, and if they saw, like, police coming they

could radio into the other two. They had walkie talkies for communication.

She stated that she purchased chains at a store in Bay and padlocks at a truckstop in Mississippi. They had two-way portable radios, including a police radio which allowed them to monitor police broadcasts. She placed all of these items in an attache case and placed it in Jaylene Parker's car.

During the last week in March, Patti saw the three appellants and defendant Caplinger leave her home for the purpose of robbing the Hynemans. They returned and said the servant had told them that the Hynemans were not home.

On April 2, at 6:30 p.m. the four of them again left the Bumgarner residence for the purpose of committing the burglary and robbery. They returned at about 7:30 p.m. with a bag full of jewelry which they gave to Patti and she hid at Bay. About a week later the three appellants and defendant Caplinger met and, in front of Patti, discussed the errors made during the robbery, the jewelry, and the amount of money they should receive from Danny Owens. They ultimately decided to sell the jewelry to whomever they chose but agreed to give Owens ten percent "off the top." Patti stated she then went to Bay, got the jewelry, gave it to her husband and defendant Caplinger, who both went to Memphis to meet Owens. Her husband, appellant Joe Bumgarner, returned home with $7,000 as his "first cut." She testified that there were more trips to Memphis and, as a result of other sales, her husband received more money.

Michael Anderson also testified in detail about the "Hillbilly Mafia." He stated that appellant Spears contacted him about committing robberies in Arkansas. He was an experienced criminal and stated that he, appellants Spears and Cassell, defendant Caplinger, along with two others, eventually committed a total of twenty-six armed robberies. He and appellant Spears drove from Peoria, Illinois to the Bumgarner residence where they met appellant Bumgarner and defendant Caplinger. They discussed various "jobs" in Arkansas. One job discussed "was about a gentleman and

his wife who had a lot of jewelry, which was supposed to be worth, like, three hundred thousand dollars." After the discussion, Anderson and appellant Spears went back to Illinois. Later, Anderson brought some guns and handcuffs to the home of appellant Joe Bumgarner just outside of Harrisburg and immediately went back to Illinois where appellant Spears told him the couple's name was Hyneman and the husband was the president of a bank. Anderson testified that he detested appellant Bumgarner and, because of that, he told appellant Spears that he would not take part with appellant Bumgarner in the crimes against the Hynemans. He stated that he did not come to Arkansas with appellant Spears to commit the Hyneman robbery even though he loaned Spears a suit of clothes which Spears wore during the robbery. Anderson testified that when Spears returned to Illinois he described the robbery in detail.

Anderson testified that about a month later he saw appellant Cassell and his wife at a bar in Springfield, Illinois where Cassell told him details about the robbery. He observed Cassell's wife wearing a ring which Anderson identified from a picture as being Margie Hyneman's ring with the aquamarine stone in the center circled by diamonds. Anderson testified that appellant Cassell told him the ring was from the Hyneman robbery and they had trouble selling it so he just kept it for his wife. Anderson testified that he and separate defendant Caplinger later went to Memphis and picked up a sack from Danny Owens which contained $36,000 or $37,000 in one hundred dollar bills which came from the sale of the eight carat solitaire diamond ring.

Arthur Baldwin, a convicted felon serving a sentence in a federal penitentiary at the time of trial, testified that Danny Owens offered to sell him some large unmounted diamonds, one of them being as large as five carats, and a ring with a cluster of diamonds. He bought the ring which was identified as Margie Hyneman's. He testified that he had purchased a Rolex watch with diamonds from Jimmy Webster and that appellant Bumgarner then told him it was "hot."

The three appellants were found guilty of the burglary and the aggravated robbery but were not found guilty on the charge of conspiracy.

The appellants' first three assignments of error related to the conspiracy charge. The burglary and aggravated robbery occurred on April 2, 1979. The appellants were charged with burglary and aggravated robbery on October 16, 1981. Then on May 26, 1982, more than three years after the burglary and aggravated robbery occurred, the information was amended to include the charge of criminal conspiracy. Appellants contend (1) the statute of limitations had run on the conspiracy charge; (2) it was error to allow Patti Bumgarner and Michael Anderson to testify about a past act and not something done in furtherance of the conspiracy; and (3) their statements were erroneously admitted before the conspiracy was proven by independent testimony.

We need not decide whether the statute of limitations had run on the charge of conspiracy because (1) the appellants were not found guilty of the charge; and (2) the admissibility of the testimony of Patti Bumgarner and Michael Anderson was not dependent upon a charge of conspiracy. Rule 801 (d) (2) (v) of the Ark. Unif. Rules of Evid., Ark. Stat. Ann. § 28-1001 (Repl. 1979) provides that testimony about an out-of-court statement by a co-conspirator of a party during the course and in furtherance of a conspiracy is not hearsay. The absence of a conspiracy charge simply has no bearing on the competency of a co-conspirator's testimony. *Smithey* v. *State,* 269 Ark. 538, 602 S.W.2d 676 (1980).

Appellants argue that error was committed by allowing Michael Anderson's testimony of statements by co-conspirators about their activities after completion of the burglary and armed robbery. The statements were admissible for two reasons: (1) the statements were admissions; and (2) the Hyneman conspiracy was not complete.

Anderson testified about statements made to him by appellants Spears and Cassell after the robbery. Neither appellant implicated the other in these statements; thus,

Spears' statement was admissible as his admission, and Cassell's statement was admissible against him.

The only statement about post-robbery activity that implicated a party other than the speaker was the statement by Spears that "they left and met Bumgarner and Caplinger down the road." However there was no objection to this statement by appellant Bumgarner. Failure to object precludes the consideration of a matter on appeal. *Wicks* v. *State,* 270 Ark. 781, 606 S.W.2d 366 (1980).

The statements were admissible for yet another reason — the conspiracy was not completed on the day of the robbery. In addressing the same issue in *Hooper* v. *State,* 187 Ark. 88, 58 S.W.2d 434 (1933), we stated:

> It is next insisted that the court erred in admitting the testimony of Mrs. Hulse and Mrs. Mills, her daughter, to the effect that Biddy Hooper, another accomplice, brought Hulse some of the money obtained in the bank robbery after the robbery was committed and the robbers had left the state; the purpose of the conspiracy having been consummated. Although it is true that the acts and declarations of a conspirator are inadmissible against his coconspirator after the accomplishment of the purpose of the conspiracy, such is not the case here. The purpose was to rob the bank and procure the money, and necessarily distribute it among those participating in the enterprise, and *the conspiracy cannot be said to have ended so long as the money procured in the robbery had not been divided among the robbers.* [Emphasis added.] *Wiley* v. *State,* 92 Ark. 586-592, 124 S.W. 249.

Likewise, in the case at bar the objective had not been completed. The objective of the conspiracy was the sale of the jewelry and a distribution of the proceeds.

The appellants next contend that the trial court committed error since the State was not required to prove the conspiracy by independent evidence before the co-conspirator's statements were allowed into evidence. But *see*

*Patterson* v. *State,* 267 Ark. 436, 591 S.W.2d 356 (1979), cert. denied, 447 U.S. 923 (1980). However, no objection was made on this basis and there was not a request for a limiting instruction. We will not consider it on appeal for the first time. *Crafton* v. *State,* 274 Ark. 319, 624 S.W.2d 440 (1981).

On cross-examination the appellants sought to impeach the credibility of State's witness Michael Anderson by asking him about convictions of prior crimes. They also sought to demonstrate prejudice by asking questions about an agreement with federal prosecutors by which he would testify in the case at bar in exchange for leniency in the federal sentencing. Following the questions and the responses, the appellants attempted to read a transcript of the federal sentencing procedure. The trial court sustained the State's objection. We agree. The transcript was consistent, not inconsistent, with the witness' testimony. A trial court is authorized to judiciously expedite a trial and to prevent an unjustifiable delay. Rule 102, Ark. Unif. Rules of Evid., Ark. Stat. Ann. § 28-1001 (Repl. 1979). Reading verbatim the transcript of the sentencing hearing under these circumstances would have amounted to a waste of everyone's time.

Appellant Bumgarner argues that there is not sufficient evidence for his conviction. He contends that his wife, Patti, and Michael Anderson were both accomplices as a matter of law and their testimony was not sufficiently corroborated. The trial judge ruled that Patti was an accomplice as a matter of law but that Anderson's status presented a question of fact for the jury. The jury found that he was not an accomplice.

In *Cate* v. *State,* 270 Ark. 972, 606 S.W.2d 764 (1980), we stated: ". . . the finding of a jury as to whether a witness is an accomplice is binding unless the evidence shows conclusively that the witness was an accomplice. *Wilson & Dancy* v. *State,* 261 Ark. 820, 552 S.W.2d 223 (1977)." Here, the evidence does not show conclusively that Anderson was an accomplice. The evidence reveals that Anderson was involved in a general conspiracy to commit armed robberies. He had knowledge that the robbery of a bank officer in Trumann was being planned and, later, that it had been

committed. In Illinois, he loaned appellant Spears a suit which Spears wore during the robbery. However, he took no part in planning the Hyneman robbery. He told Spears he wanted no part of the robbery and it is undisputed that he took no part in it. In a similar situation, we stated:

> The term accomplice does not embrace one who had guilty knowledge or who is morally delinquent; it includes only one who takes or attempts to take some part, performs or attempts to perform some act or owes some legal duty to the victim of the crime to prevent its commission; and mere presence, acquiescence, silence, or knowledge that a crime is being committed, in the absence of some legal duty to act, concealment of knowledge or failure to inform officers of the law, is not sufficient to make one an accomplice. *Wilson* v. *State,* 261 Ark. 820, 552 S.W.2d 223; Ark. Stat. Ann. § 41-303 (Repl. 1977).

*Hicks* v. *State,* 271 Ark. 132, 607 S.W.2d 388 (1980).

Despite Anderson's moral delinquency he was not an accomplice as a matter of law in the Hyneman robbery and burglary. His testimony was sufficient evidence for the conviction of appellant Bumgarner.

Appellant Bumgarner next contends that the Interstate Agreement on Detainers, Ark. Stat. Ann. § 43-3201 (Repl. 1977), was violated and the trial court erred in failing to dismiss the charges against him. The Interstate Agreement on Detainers is an interstate compact which operates in conjunction with a federal enactment. Article III provides that where a detainer is lodged against a prisoner based upon an untried indictment, information or complaint of another state, the prisoner, upon request, must be brought to trial within 180 days from the date of receipt of written notice of the place of his confinement and demand for trial. Ark. Stat. Ann. § 43-3201 Art. III (a). Failure to accord a timely trial may mandate dismissal of the untried charge. *Padilla* v. *State,* 279 Ark. 100, 648 S.W.2d 797 (1983). Here the demand was received and filed on January 4, 1982, and appellant was not tried until July 14, 1982, which was a period of 190 days.

However, the time limits are tolled during the periods when the prisoner is removed from the custodial place of incarceration to a place other than the demanding jurisdiction. *Young* v. *Mabry*, 471 F. Supp. 553 (E.D. Ark. 1978), aff'd. 596 F.2d 339 (8th Cir. 1979), cert. den. 444 U.S. 853 (1979). Here, after the demand, the custodial place of incarceration, United States Penitentiary at Terre Haute, Indiana, sent the prisoner to the Federal Correctional Institute at Memphis to appear before the grand jury of the Western District of Tennessee before he was available to the demanding state, Arkansas. According to pleadings prepared and signed by appellant Bumgarner, he was sent to the Federal Correctional Institute on January 21, 1982, and was still there on March 12, 1982. The speedy trial limit was tolled during this period and the Interstate Agreement on Detainers was not violated.

Appellant Bumgarner contends that error occurred by submitting the issues of guilt and sentencing to the jury at the same time but there was no objection to the procedure. Failure to object precludes the consideration of a matter on appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980). He also contends that his Sixth Amendment right to counsel was denied when the trial court refused to grant a continuance for him to employ new counsel.

The trial judge did not abuse his discretion. Bumgarner is well acquainted with the criminal court system. He testified about his expertise in penitentiary "writ writing" and his wife testified that he deliberately helped her establish grounds for a mistrial in a different criminal case. He clearly understood the charges against him and, without question, understood his rights. He vigorously sought to represent himself. Even so, the trial court took the precaution of appointing standby counsel shortly after the charges were filed. The standby counsel was present and assisted Bumgarner at trial. On the morning of trial Bumgarner claimed he wanted the continuance in order to employ some unnamed attorney. While he was demanding a continuance, he was also demanding dismissal for lack of a speedy trial under provisions of the Interstate Agreement on Detainers. The denial of such a ruse does not constitute error. *Berry* v.

*State,* 278 Ark. 578, 647 S.W.2d 453 (1983). The trial judge quite properly considered the need for proper court administration and the public's interest in a suitably prompt trial.

Appellant Bumgarner next contends that the trial court committed error in refusing to dismiss the charges against him because of illegal surveillance by the State. The argument must fail for two reasons. First, the trial court found that there was no proof the State obtained any evidence by illegal surveillance. There is no evidence to the contrary. Second, appellant neither cites any authority for dismissal of charges if illegal surveillance occurred, nor does he make a convincing argument for such a proposition. Therefore we will not consider the matter. *Dixon* v. *State,* 260 Ark. 857, 545 S.W.2d 606 (1977).

Appellant Bumgarner contends that the trial court abused its discretion by refusing to grant his motion for a severance from the trials of appellants Spears and Cassell. The overriding duty of a trial judge in ruling on a severance motion is to determine whether the jointly charged defendants can be tried together without substantial injustice. In making such a determination, the following factors are to be considered:

> (1) where defenses are antagonistic; (2) where it is difficult to segregate the evidence; (3) where there is a lack of substantial evidence implicating one defendant except for the accusation of the other defendant; (4) where one defendant could have deprived the other of all peremptory challenges; (5) where if one defendant chooses to testify the other is compelled to do so; (6) where one defendant has no prior criminal record and the other has; (7) where circumstantial evidence against one defendant appears stronger than against the other.

*McDaniel & Gookin* v. *State,* 278 Ark. 631, 648 S.W.2d 57 (1983).

In the case at bar the defenses were not antagonistic. The evidence was easily segregated. The State's case was

strong against all of the appellants. No peremptory challenge problems were presented. Bumgarner was not compelled to testify by the testimony of Spears or Cassell. In short, the appellants were tried together without any prejudice to appellant Bumgarner.

Under Ark. Stat. Ann. § 43-2725 (Repl. 1977), as put into effect by our Rule 11 (f), we consider all objections brought to our attention in the abstracts and briefs in appeals from a sentence of life imprisonment or death. In this case we find no prejudicial error in the points argued or in the other objections abstracted for review.

Affirmed.

ADKISSON, C.J., concurs in part and dissents in part.

PURTLE, J., dissents.

RICHARD B. ADKISSON, Chief Justice, concurring in part and dissenting in part. I concur in the affirmance of the convictions of defendants Spears and Cassell but dissent in the affirmance of the conviction of defendant Joseph Bumgarner.

Accomplice testimony is not sufficient to convict unless corroborated by other evidence which tends to connect the defendant with the commission of the offense. Ark. Stat. Ann. § 43-2116 (Repl. 1977). The corroborating evidence must be independent of evidence given by the accomplice. *Froman* v. *State*, 232 Ark. 697, 339 S.W.2d 601 (1960). Here the only evidence at trial that actually connected defendant Joseph Bumgarner with the crime came in testimony by Patti Bumgarner, his wife, and Michael Anderson. Both were accomplices as a matter of law. The trial court so found as to Patti Bumgarner, but the finding as to Michael Anderson was erroneously left for a determination by the jury.

Anderson admitted at trial that he was a part of an ongoing criminal conspiracy to commit a series of crimes. In regard to the particular crime here in question, Anderson

admitted that he provided Spears with a suit to wear during the robbery and brought, for use in the crimes, guns and handcuffs to Bumgarner's home. In view of this undisputed testimony, and in the absence of any inference to the contrary, Anderson should have been declared an accomplice as a matter of law.

Michael Anderson testified at trial about a statement made to him by co-defendant Spears which implicated defendant Bumgarner. The majority justifies the admission of this testimony by supposing that the conspiracy had not ended, thereby bringing the statement within Unif. R. Evid., Rule 801 (d) (2) (v) which provides for admission of a statement by a co-conspirator of a party "during the course and in furtherance of the conspiracy." The majority bases this supposition on the case of *Hooper* v. *State*, 187 Ark. 88, 58 S.W.2d 434 (1933), where this Court held the conspiracy to rob one bank did not end until the split of the cash between the accomplices. Here, all proceeds from the robbery had been distributed. Clearly, the conspiracy had ended, and the statement was inadmissible hearsay.

The majority justifies the admission of Anderson's statement implicating Bumgarner by asserting that there was no objection by appellant Bumgarner to this statement. But, there was an objection to this testimony. The trial court, in ruling on the objections of the three co-defendants, said, "[a]ny objection made by any [one defendant] will inure to the benefit of any other defendant." Clearly the objection by defendant Cassell was sufficient to preserve the issue as to defendant Bumgarner.

JOHN I. PURTLE, Justice, dissenting. I respectfully dissent because in my opinion there were at least four reversible errors at trial and in the events surrounding it.

First the evidence conclusively showed that Anderson was an accomplice as a matter of law. It was error to give that question to the jury. The majority simply misreads the facts when they say that "it is undisputed that (Anderson) took no part in (the robbery)." What is actually undisputed is that Anderson helped plan 26 robberies including the one under

consideration. He drove from Peoria, Illinois to Arkansas to discuss various "jobs" in Arkansas. He stated that he remembered discussing a case of a gentleman and his wife who had a lot of jewelry. Anderson admitted that Spears told him the couple's name was Hyneman and the man was a bank president. Anderson also testified that he brought guns and handcuffs from Illinois to Arkansas. Anderson lent Spears a suit to wear during the robbery, and he admitted that he knew why Spears wanted it and what he would do with it.

In my opinion the evidence showed conclusively that Anderson was an accomplice. Ark. Stat. Ann. § 41-303 (Repl. 1977). As such was the case, the trial court should have so instructed the jury and should have required the corroboration of his testimony.

Second, it was error to allow the conspiracy charge to stand. The majority state that no prejudice resulted because the appellants were not convicted of conspiracy. Of course, it is clear that the appellants could not have been convicted of conspiracy and the substantive offenses. Conspiracy merges with the substantive offense. After the act is consummated the conspiracy is not indictable. *Owen* v. *State,* 263 Ark. 493, 565 S.W.2d 607 (1978); *Zachry* v. *State,* 260 Ark. 97, 538 S.W.2d 25 (1976); *Elsey* v. *State,* 47 Ark. 572, 2 S.W. 337 (1886). In addition, Ark. Stat. Ann. § 41-105 makes it clear that the appellants could not have been convicted of both conspiracy and the substantive offenses. In my opinion it was error to allow evidence of a crime of which the appellants could not be convicted. I think the conspiracy charges were filed solely for allowing the state to introduce evidence not otherwise admissible.

In addition, there was no evidence to support the majority's assertion that the conspiracy was ongoing past the date of the robbery. While there was evidence that individual conspirators were disposing of the robbery loot, there was no evidence of any concerted effort to do so and no evidence that any of the proceeds were distributed to anyone other than the person disposing of some particular item from the robbery. The evidence in *Hooper* v. *State,* 187 Ark.

88, 58 S.W.2d 434 (1933), upon which the majority relies clearly established an ongoing effort to distribute proceeds to the members of the conspiracy.

Third, the trial court erred in restricting the cross examination of Anderson concerning the bargain he made in return for his testimony. The record clearly shows that such a deal was made. I am not arguing that the appellants were entitled to read the entire sentencing transcript to the jury, but I do insist that the court should have allowed any portions of it directly relating to the deal Anderson made.

Finally, I believe Bumgarner was denied effective assistance of counsel. He was locked in isolation several days before the trial began and separated from his co-defendants as well as from potential witnesses. Bumgarner acted as his own counsel and his isolation unnecessarily hampered his efforts at preparing an adequate defense.