Joseph L. BUMGARNER, Appellant,

v.

Harry BLOODWORTH, Individually and in his official capacity as Sheriff of Poinsett County, Arkansas; Gene Henderson, Individually and in his official capacity as Deputy Sheriff for Poinsett County, Arkansas, Appellees.

Joseph L. BUMGARNER, Appellant,

v.

Lohnes T. TINER, Individually and in his official capacity as a practicing attorney in the State of Arkansas; David Burnett, Individually and in his official capacity as Prosecuting Attorney for the Second Judicial District of Arkansas; Noyl Houston, Individually and in his official capacity as Deputy Prosecuting Attorney for Poinsett County, Arkansas; Bill Caplinger, Individually and in his official capacity as a State informant; Patty Bumgarner, Individually and in her official capacity as a State informant, Appellees.

No. 84–2431.

United States Court of Appeals, Eighth Circuit.

Submitted May 7, 1985.

Decided July 24, 1985.

---

Joseph L. Bumgarner, pro se.

Curtis L. Nebben, Deputy Atty. Gen. of Ark., for appellees.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Joseph L. Bumgarner appeals from the final judgment of the District Court[1] for the Eastern District of Arkansas dismissing four actions. They include one habeas corpus petition, 28 U.S.C. § 2254, and three related 42 U.S.C. § 1983 claims. For reversal Bumgarner argues that the district court erred in dismissing the actions for failure to exhaust, for failure to state a claim and as frivolous. We affirm.

A detainer was filed against Bumgarner while he was an inmate of the United States Prison in Terre Haute, Indiana. He was transferred to Poinsett County Jail in Harrisburg, Arkansas, to stand trial for burglary and aggravated robbery. While he was in the county jail, Bumgarner was in an "open" cell on the same floor with one of his codefendants, Billy Caplinger. Bumgarner's wife, a third codefendant, was in the same prison on another floor.

Caplinger and Mrs. Bumgarner were represented by Attorney Lohnes T. Tiner who is a defendant in one of the § 1983 actions. Bumgarner opted to proceed pro se in his defense to the charges. During the trial preparation Tiner took a sworn statement from Mrs. Bumgarner on behalf of Caplinger. Apparently Mrs. Bumgarner cooperated with Tiner in his defense of Caplinger.

Bumgarner alleged that, not knowing who was representing whom, nor the trial strategies of his codefendants, he gave information to his codefendants concerning the facts of the case, as well as the nature of his plan to defend himself. Bumgarner contends that this information was drawn from him in a fraudulent manner in a conspiracy to deny him a fair trial pursuant to the sixth amendment.

Shortly before the trial, Bumgarner was accused of offering a bribe to a jail trusty in exchange for a key to his cell. As a result, Bumgarner was placed in "deadlock" status (an isolated cell) until the end of his trial. Bumgarner alleges that as a result of his status his mail was intercepted and read (in order for the state to learn his legal defense), his telephone calls were monitored and recorded, and his visitation rights were revoked. Bumgarner contends these acts violated the eighth and sixth amendments to the United States Constitution.

**A. Habeas Corpus Petition: Case # J-C-84-90**

The district court dismissed Bumgarner's petition for a writ of habeas corpus because Bumgarner had not exhausted his state remedies. Bumgarner was sentenced in Arkansas to life in prison for his participation in a burglary and aggravated robbery. The conviction was affirmed on

---

1. The Honorable William R. Overton, United States District Judge, Eastern District of Arkansas.

appeal. *Spears v. State*, 280 Ark. 577, 660 S.W.2d 913 (1983).

Eight of Bumgarner's grounds for a writ of habeas corpus were not raised on direct appeal, but were included in a subsequent "Petition for Writ of Error Coram Nobis." The Arkansas Supreme Court treated the coram nobis petition as a petition for rehearing and denied it. In doing so, the court did not rule on the merits of the eight issues raised here, because issues first raised in a petition for rehearing will not be considered in connection with direct appeal. Therefore, the eight claims are unexhausted, and the State of Arkansas concedes that Bumgarner may file a post-conviction petition under Ark.R.Crim.P. 37 and raise these issues.

We agree with the district court's dismissal. *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982).

### B. § 1983 Complaint Alleging Conspiracy to Deprive Mr. Bumgarner of a Fair Adversarial Trial: Case # J–C–84–61

■ Bumgarner filed a § 1983 complaint against attorney Tiner, prosecuting attorneys Burnett and Houston, codefendant Caplinger and codefendant and ex-wife Patty Bumgarner alleging that the defendants conspired to deny him his right to counsel. He contends that Caplinger and Mrs. Bumgarner were placed in proximity to him (same jail house, same floor) in order to coax his defense from him. He alleges that these conversations, while made on the representation that they were all "in the same boat" amounted to a violation of his sixth amendment right to counsel.

We disagree. In these circumstances, to show that the state violated his sixth amendment right to counsel, the petitioner must show that the state placed an informant in his proximity in order to gain incriminating information from him, and that he in fact divulged incriminating information without the assistance of counsel. *See United States v. Henry*, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) (where government's action of placing informant in same cell block in order to gain access to incriminating statements made by prisoner violated the defendant's sixth amendment right to counsel).

■ Such is not the case here. Bumgarner has not alleged that he divulged privileged information that was used against him, *see United States v. Zabel*, 767 F.2d 928, 929 (8th Cir.1985) (per curiam), and the material available to us discloses none.

### C. § 1983 Action for Being Placed in Isolation Prior to and During Trial: Case # J–C–83–115

■ Bumgarner filed a § 1983 action seeking damages for his being placed in "deadlock" cell status without a hearing or written reasons. Deadlock status is akin to isolation in that it involves incarceration in a private cell. A few days before trial, Bumgarner was alleged to have offered a prison trusty a large sum of money in exchange for a key to his cell. After his behavior was reported, Bumgarner was placed in "deadlock" in order to prevent a possible escape. The bribery charge was discussed with Bumgarner at a pretrial hearing on his criminal charge shortly before trial and the "deadlock" status was reported further to the state trial judge at commencement of the criminal trial. Bumgarner, of course, attended and participated in his trial with access to appointed standby counsel. However, he was not removed from "deadlock" until he was convicted and sentenced on July 16, 1982. Bumgarner claims that the isolation violated his sixth, eighth, and fourteenth amendment rights. We disagree and find no merit in Bumgarner's contentions.

The United States Supreme Court has stated:

[w]e have repeatedly said both that prison officials have broad administrative and discretionary authority over the institutions they manage and that lawfully incarcerated persons retain only a narrow range of protected liberty interests. As to the first point, we have recognized

that broad discretionary authority is necessary because the administration of a prison is "at best an extraordinarily difficult undertaking."

*Hewitt v. Helms,* 459 U.S. 460, 467, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (quoting *Wolff v. McDonnell,* 418 U.S. 539, 566, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974)).

Clearly, Bumgarner had appeared to have created a substantial security risk of flight justifying his exclusion from the general prison population. We view the nature of his segregation as " 'administrative segregation[, which] is not punitive and ... looks to the present and the future rather than to the past.' " *Jones v. Mabry,* 723 F.2d 590, 594 (8th Cir.1983) (quoting *Kelly v. Brewer,* 525 F.2d 394, 399 (8th Cir.1975)), *cert. denied,* —— U.S. ——, 104 S.Ct. 2683, 81 L.Ed.2d 878 (1984).

■ Nor, as the district court observed, was there any significant prejudice to trial preparation. Appellant had several months within which to prepare for trial. There is no indication that a partial loss of privileges for a few days, if it occurred, in any way hampered the defense.

■ Likewise we find no merit to his eighth amendment claim. Bumgarner has not alleged facts which, if proved, would establish that his isolation was cruel and/or unusual. *See Hutto v. Finney,* 437 U.S. 678, 681–84, 98 S.Ct. 2565, 2568–70, 57 L.Ed.2d 522 (1978).

### D. § 1983 Complaint for Opening his Mail, Monitoring Phone Calls and Limiting his Visitation Rights: Case # J–C–84–325

Bumgarner alleges that his constitutional rights were violated while he was in isolation because his letters were opened, his visitation was curtailed and his phone calls were monitored and recorded.

### 1. Opening an inmate's mail

■ With respect to his allegation that he has had his mail opened, Bumgarner does not allege that the mail was privileged legal mail between him and his attorney; instead, he merely asserts that the mail was opened in order that the state could gain access to his defense. That is, he maintains that as a pro se attorney all incoming mail should be construed by this court as legal mail.

We decline to follow Bumgarner's construction. Even though the courts have recognized that censorship is not permitted for privileged mail, *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 576–77, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974), it is well established that intrusions into a prisoner's personal mail for security reasons do not contravene the strictures of the Constitution. *See Jensen v. Klecker,* 648 F.2d 1179, 1182 (8th Cir.1981) (per curiam). The United States Supreme Court has repeatedly allowed inspection of personal mail where "the legitimate government interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Procunier v. Martinez,* 416 U.S. 396, 412–413, 94 S.Ct. 1800, 1810–1811, 40 L.Ed.2d 224 (1974).

### 2. Limiting Visitation Rights

■ Bumgarner has also failed to state a due process claim as to visitation. We recognize that visitation rights are "rights" with respect to which the Supreme Court has given broad discretionary authority to administrators in order to manage the prison. *See Hewitt v. Helms,* 459 U.S. at 467, 103 S.Ct. at 869. Bumgarner was already an escape risk and as such the restriction on visitation was reasonably related to keeping Bumgarner from escaping. *See Block v. Rutherford,* —— U.S. ——, ——, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438 (1984). (A county jail's blanket prohibition against pre-trial contact visits was an entirely reasonable non-punitive response to legitimate security concerns that are non-violative of the fourteenth amendment and within the professional administrator's province. *Id.* at 3234.) Furthermore Bumgarner did not

even allege that visitors were indeed turned away.

### 3. Monitoring Communications

Finally, Bumgarner asserts that the prison officials unconstitutionally monitored his telephone conversations in violation of his fourth amendment rights and in order to usurp his sixth amendment right to counsel. This question has produced somewhat conflicting results in the Circuits where it has been addressed, particularly where claims are laid under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. *Compare Campiti v. Walonis*, 611 F.2d 387 (1st Cir.1979) (monitoring inmates' telephone calls was not within ordinary course of state correctional institute's business) *with United States v. Paul*, 614 F.2d 115 (6th Cir.) (where inmates had notice of monitoring of telephone messages, monitoring was within ordinary course of correctional officer's duties), *cert. denied*, 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796 (1980).

 We observe that Bumgarner's criminal trial court found that there was no proof that the state had obtained any evidence by illegal surveillance of Bumgarner, *Spears v. State*, 660 S.W.2d at 920. Thus, we need not determine whether monitoring, as was alleged to have occurred here, was appropriate to maintain internal prison security or violated the sixth amendment or any privacy Title III was designed to address. Relatedly, the fourth amendment claim as well need not be dwelt upon. We observe only in passing that attributes of privacy of a jail may hardly be equated with those of a home, an automobile, an office, or a hotel room. *Lanza v. New York*, 370 U.S. 139, 143, 82 S.Ct. 1218, 1220, 8 L.Ed.2d 384 (1962); *see Hudson v. Palmer*, ── U.S. ──, ──, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984).

Accordingly, and largely on the basis of the opinion of the district court, the judgment of the district court is affirmed.

* Motion denied on remand, D.C., 614 F.Supp. 1208.