## WILEY *v*. STATE.

### Opinion delivered December 13, 1909.

1. APPEAL AND ERROR—CONCLUSIVENESS OF JURY'S FINDING.—Where there is any evidence of a substantial character to sustain the finding of the jury as to a question of fact, it will not be disturbed on appeal. (Page 590.)

2. LARCENY—POSSESSION OF GOODS RECENTLY STOLEN.—The possession of goods recently stolen, if unexplained, affords presumptive evidence of guilt, and if, in connection with the other facts and circumstances proved in the case, it induces in the minds of the jury a belief, beyond a reasonable doubt, of the guilt of the defendant, it becomes sufficient to warrant a conviction. (Page 590.)

3. SAME—WHEN GOODS RECENTLY STOLEN.—In determining whether the theft of property was recent or remote, not only the lapse of time should be considered, but also the nature of the property alleged to have been stolen, the actions of the defendant and the nature of his claim thereto, if he subsequently made an assertion of title, and all the circumstances surrounding the particular case. (Page 591.)

4. EVIDENCE—ACTS OF CONSPIRATOR.—The rule that the acts, conduct and declarations of one conspirator after the consummation of the conspiracy are inadmissible as evidence against another conspirator cannot be extended to exclude the evidence of the subsequent finding of the fruits of the crime in the possession of one of the conspirators. (Page 592.)

5. SAME—PROOF OF CONSPIRACY.—Proof that a lot of goods were stolen upon one occasion, and that a portion of them was found in the possession of the accused, and that the remainder was in the possession

of another, was competent to show that the two acted together in stealing the goods. (Page 593.)

Error to Franklin Circuit Court; *Jeptha H. Evans,* Judge; affirmed.

*Sam R. Chew,* for appellant.

The presumption that stolen property was found on the thief is not conclusive, and, of itself, is not sufficient for a conviction. 34 Ark. 443; 68 Ark. 529. The act or declaration of a co-conspirator made after the transaction or enterprise is incompetent. 20 Ark. 216; 45 Ark. 132; *Id.* 165; *Id.* 328; 57 Ark. 1; 59 Ark. 422.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant, for appellee.

Possession of recently stolen property is evidence to go to the jury for what it is worth. 34 Ark. 443; 44 Ark. 39; 54 Ark. 621; 55 Ark. 244; 58 Ark. 576; 62 Ark. 494.

FRAUENTHAL, J. The defendant, Will Wiley, and one Tom Trotter, Jr., were jointly indicted by the grand jury of Franklin County, and charged with the crimes of burglary and grand larceny. In the first count of the indictment these parties were charged with burglarizing the store house of L. J. Stockton, and in the second count they were charged with taking, stealing and carrying therefrom a lot of goods and merchandise, the property of said Stockton. The goods and merchandise alleged to have been stolen consisted of a lot of calico, lawn, gingham, percale, chambray, ribbon, elastic, shirts, hose; slippers, scissors, tobacco, etc.; and each item of the goods is set forth in the indictment, together with the value thereof. There was a severance of the trial of the two parties, and the defendant, Wiley, was in this case placed upon separate trial. The defendant was acquitted of the charge of burglary, but was convicted upon the count of the indictment charging him with grand larceny, and his punishment was fixed at one year's imprisonment in the penitentiary. From this conviction the defendant presents this appeal.

The evidence adduced upon the trial of the case tended to establish the following facts: L. J. Stockton was the owner

of, and was conducting a small mercantile business in, a country store house situated at the forks of two public roads in Franklin County. On the night of Saturday, May 1, 1909, the store house was broken into by an entry being made through a window, and the goods and merchandise set out in the indictment were taken therefrom and stolen. The burglary and larceny were discovered by Stockton on the evening of the following day, and he and his daughter, who was assisting him in attending to the business, made a list of the goods that had been taken from the store on said night. On May 1, 1909, the defendant and said Tom Trotter, Jr., were living and working upon a bottom farm about four miles from the store house; and at that time they lived about 150 yards from each other. They were close friends, and about one year and a half or two years prior to this time they lived near each other in Oklahoma. Trotter returned from Oklahoma to Franklin County in December, 1908, and the defendant at an earlier date during that year. Some time after May 1, 1909, these parties moved from the bottom land, and in July, 1909, lived about one mile apart and nearer the locality in which the store house was situated. On July 23, 1909, under and by virtue of a search warrant, certain officers and L. J. Stockton went to the house of said Trotter, and there searched for the goods and merchandise alleged to have been stolen. They found in Trotter's house a lot of new calico, lawn, chambray, and other goods which were identified by Stockton as goods that had been in his stock, and that were taken therefrom on May 1, 1909. These goods were found in the bottom of a trunk, and were covered with other goods that were not new and some bed clothes. The officers then proceeded in company with Stockton and went to the house of defendant, Wiley. In this house they found also a lot of goods and merchandise which Stockton identified as owned by him and as having been in his stock and taken therefrom on said May 1. These goods were found in a clothes press upon which were piled other goods that were not new, and also quilts. Amongst the property taken from Stockton's store were three large scissors which had the mark or brand thereon of "Empress." A pair of scissors similar to these was found at the house of Trotter, and one pair of scissors also similar to these was found at the house of the defendant, and Stockton identified

these scissors as his property which was taken from his house on the night of May 1. While the goods were being identified and claimed by Stockton and taken possession of by the officers, the defendant made no explanation of how he obtained them; but on his trial he said the reason that he made no explanation at that time was that he did not care to do so because he knew where he had gotten them and could show his innocence. · While the defendant was living on the bottom land, there was located near his home a cave or hole in a bluff; and a short time after the store house of Stockton was burglarized a young boy saw the defendant and his wife at this place in the bluff with two sacks, and under circumstances indicating that he was hiding property in this cave or hole in the bluff. The defendant claimed, in explanation of this, that he was only at the time hunting a mule.

The defendant introduced the evidence of his relatives and himself by which he endeavored to prove that the goods found in his possession were purchased from time to time from merchants; and he introduced evidence showing that other merchants at the towns in Franklin County kept in their stocks of merchandise for sale goods similar to those alleged to have been stolen. He introduced Tom Trotter, Jr., as a witness who claimed to have purchased the goods found in his possession from merchants principally in Fort Smith and Oklahoma.

We do not think it necessary to further detail the facts and circumstances adduced in the evidence in this case. The above presents sufficiently the character of the case that was made out against the defendant and the questions that are presented upon this appeal for determination. The chief question of fact involved in the case is whether or not the goods and merchandise that were found in the possession of Trotter and the defendant were the property of L. J. Stockton and the goods which he claimed were stolen from the store house. For, if they were the property of Stockton, then the explanation of the defendant of how he obtained them must necessarily have been fabricated and. false; and this, taken in connection with the other facts and circumstances adduced in evidence, is, we think, sufficient evidence to sustain the verdict of the jury.

It is earnestly urged by able counsel for the defendant that there is not sufficient evidence to sustain the finding that these goods and merchandise found in the possession of the defendant and Trotter were the property of L. J. Stockton. These goods and merchandise were presented in evidence, and Mr. Stockton and his daughter in the presence of the jury picked out and identified the goods as his property and as the goods which were taken from his store. The defendant and his witnesses testified that he had the property some time before the date of the burglary. These witnesses appeared before the jury, who were the exclusive judges of their credibility and also the judges of what weight to give to the testimony of Stockton and his daughter. This, therefore, was peculiarly a question of fact and especially a matter within their province to determine. As to that question of fact, we are of the opinion that there was some evidence to sustain the finding of the jury; and this court has uniformly held that where there is any evidence of a substantial character to sustain the finding of the jury as to a question of fact, it will not be disturbed. *Hubbard* v. *State,* 10 Ark. 378; *Chitwood* v. *State,* 18 Ark. 453; *Dixon* v. *State,* 22 Ark. 213; *Harris* v. *State,* 31 Ark. 196; *Holt* v. *State,* 47 Ark. 196; *Williams* v. *State,* 50 Ark. 511; *Gunter* v. *State,* 79 Ark. 432.

It thus being determined that these goods and merchandise were the property of L. J. Stockton and the goods which were stolen, the possession of them by the defendant was a fact from which his complicity in the larceny might be inferred. The possession of property recently stolen and unexplained affords presumptive evidence of guilt. Such possession is a circumstance which may be proved and taken into consideration by the jury, and if, in connection with the other facts and circumstances proved in the case, it induces in the minds of the jury a belief, beyond a reasonable doubt, of the guilt of the defendant, it becomes sufficient to warrant a conviction. Rapalje on Larceny and Kindred Offenses, § 162; *Boykin* v. *State,* 34 Ark. 443; *Shepherd* v. *State,* 44 Ark. 39; *Denmark* v. *State,* 58 Ark. 576; *Gunter* v. *State,* 79 Ark. 433; *Douglass* v. *State,* 91 Ark. 492.

The question as to whether or not the possession of stolen property is recent does not depend wholly upon the lapse of

time.  The nature of the property alleged to have been stolen, the actions of the defendant and the nature of his claim thereto, if he subsequently makes an assertion of title, and all the circumstances surrounding the particular case should be taken into consideration in determining whether the possession of the property was at a time after it was recently stolen, or whether it was so remote that it should not be considered that it was recently stolen.  8 Enc. of Evidence, 101 ; *State* v. *Miller,* 45 Minn. 521 ; *Commonwealth* v. *Montgomery,* 11 Metc. (Mass.) 534.

In the case at bar the merchandise was stolen and secreted; and some time after it was discovered in the possession of the defendant he made a distinct assertion of title to it.  Subsequently he claimed to have acquired possession of the property at a time long before the date when they were alleged to have been stolen from Stockton, the owner.  He could not have obtained them therefore innocently from any other person.  It then became a question of fact for the jury to determine as to whether or not his claim of title was made honestly and in good faith, or whether it was false and fabricated.  For, if the claim made by him that he acquired and was in possession of the property prior to the date that it is alleged that it was stolen from Stockton was false and based on fabricated testimony, then the inference of his guilt was strengthened.  The possession of the property by defendant under the circumstances of this case was not too remote, therefore, from the date that they were alleged to have been stolen to deprive it of its probative effect as a fact from which an inference of the guilt of the defendant could be drawn by the jury.  This inference, taken in connection with the other circumstances in the case and the false and fabricated claim of the acquisition of the property by the defendant, is sufficient, we think, to sustain the verdict of conviction.

It is urged by counsel for defendant that the court erred in permitting evidence to be introduced that part of the alleged stolen goods were found at the house of Trotter.  It is contended that such evidence could only be admissible on the ground that it was in the nature of the declaration, act and conduct of a co-conspirator.  It is urged that there is no testimony showing any combination or conspiracy between the defendant and

Trotter to commit this alleged crime; and, inasmuch as these acts and conduct of Trotter occurred and the possession of the goods was discovered at Trotter's house in the absence of the defendant and long after the criminal enterprise, if any, was ended, the testimony was not admissible.

It is well settled that, before evidence of the acts, declarations or conduct of an alleged conspirator can be introduced, the conspiracy must first be shown by evidence *aliunde,* and must be done or made while the conspiracy continues. The general rule of law is that when the deed is done and the criminal enterprise is ended the criminating conduct or declarations of one conspirator are inadmissible against his co-conspirator. Rapalje on Larceny and Kindred Offenses, p. 732; 12 Cyc. 439; *Clinton* v. *Estes,* 20 Ark. 216; *Rowland* v. *State,* 45 Ark. 132; *Polk* v. *State,* 45 Ark. 165; *Foster* v. *State,* 45 Ark. 328; *Vaughan* v. *State,* 57 Ark. 10; *Gill* v. *State,* 59 Ark. 422.

But this rule does not apply when the possession of the goods that were stolen at the same time are found in the possession of such party. The fact that each of the parties is found to possess portions of the stolen goods which were taken at the same time is itself competent to establish a conspiracy and to implicate each in the commission of the crime. The fact that the several portions of goods made in the aggregate the amount of goods that it is proved were taken would be a circumstance to identify the goods, although the separate portions were found at different places, and such evidence would also be competent for that purpose. In the case of *Clark* v. *State,* 12 S. W. 729, it was held that the rule that the acts, conduct and declarations of one co-conspirator after the consummation of the conspiracy are inadmissible as evidence against another conspirator cannot be extended to exclude the evidence of the subsequent finding of the fruits of the crime in the possession of one of the conspirators.

In the case of *Fisher* v. *State,* 73 Ga. 395, freight cars had been broken in and entered and goods stolen therefrom. The defendant in that case and several other parties were jointly indicted charged with the commission of the crime, and the defendant was placed upon his separate trial. In that case the court held that the fact that the same class of goods missed

from the broken and rifled cars were found in the possession of each of the parties was clearly competent, not only to establish a conspiracy, but to implicate the defendant in the guilt of his associates. Rapalje on Larceny and Kindred Offenses, p. 733; 12 Cyc. 444.

In the case at bar a lot of merchandise was taken from the store house of Stockton upon one occasion. A part of these stolen goods was found in the possession of Trotter, and a part thereof was found in the possession of the defendant. That was a fact that was competent to go to the jury to show that the two had acted together in securing these goods, and that the defendant was implicated in thus securing them. At the time this testimony was introduced, the court, upon objection being made thereto, stated that any declaration or action of Trotter would not be admitted, and that the only testimony that was admissible was as to the fact that these goods were found in the possession of Trotter. And that was the extent of the testimony admitted relative to any act or conduct of Trotter, and there was no testimony as to any declaration that was made by him. We think that the testimony thus admitted was relevant and competent.

We have carefully examined the instructions that were given by the court, and we find that they fully and correctly presented the law that was applicable to the facts of this case. It was peculiarly the province of the jury under these instructions to determine from the facts and circumstances adduced in evidence as to whether or not the defendant was guilty of the charges preferred in the indictment.

They found from the facts and circumstances that he was guilty, and convicted him of grand larceny. We cannot say that there is no substantial evidence to sustain that verdict; and therefore the verdict should not be disturbed.

The judgment is affirmed.