Rodney DOUBLEDAY *v*. STATE of Arkansas

CA CR 03-328 138 S.W.3d 112

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered December 10, 2003

[Petition for rehearing denied January 14, 2004.]

*Montgomery, Adams & Wyatt, PLLC,* by: *Dale E. Adams,* for appellant.

*Mike Beebe,* Att'y Gen., by: *Brent P. Gasper,* Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. Appellant was charged and convicted of theft by receiving. He was sentenced by the trial court to five years' probation. On appeal, appellant argues that the trial court erred because the State failed to prove that the trailer in question was actually that of the victim and that appellant possessed the trailer knowing it was stolen or having good reason to believe that it was stolen. We affirm.

In 1996, Lonnie Allen purchased a white utility trailer manufactured by Wells Cargo for approximately $4,500 in Mt. Pleasant, Texas. The trailer was registered with the Arkansas Department of Finance and Administration Office of Motor Vehicles on May 21, 1997, and its Motor or Vehicle Identification Number (VIN) is 1WC200F25T2030005. Allen reported the trailer stolen on August 13, 1999.

In his report to Officer Murphy Taylor of the Fairfield Bay Police Department, Allen described his utility trailer as having several identifying marks, including a "bubble" on the front of it and a dent in the top where he had "hit it with [his] Bobcat several months before it was stolen." Further, Allen noted that he had made several alterations to his trailer that would help him in identifying it. Those alterations included drill holes in specific places for wiring of the emergency brakes and drill holes for a nose cone over the tongue of the trailer and a tool box.

While on patrol on October 10, 2000, Officer Taylor noticed a trailer at a construction site where Norman McElroy was building a house. He saw that the trailer had a "bubble on it," and was painted a "dingy, grayish looking black." Taylor also noticed that there was a "factory-baked type white" on the trailer. Taylor

decided to investigate the trailer after determining that the trailer looked strange because the colors "did not go together." He noticed holes in the tongue and observed a single door on the trailer, which he found unique since most had double doors. Taylor ran the license plate, which was registered to appellant. The plate, however, was for a 1999 homemade black utility trailer. The vehicle identification number he discovered on the tongue came back "nonexistent," meaning "not in file." Taylor testified that he had enough suspicion about the trailer that he contacted the police department and requested Allen's presence. At the site, Allen identified the trailer as his. Thereafter, appellant was linked to the trailer and charged with it theft by receiving. This appeal followed appellant's subsequent conviction.

██ A directed-verdict motion is a challenge to the sufficiency of the evidence. *Slater v. State*, 76 Ark. App. 365, 65 S.W.3d 481 (2002). Where the issue is sufficiency of the evidence in a criminal case, the test is whether there is substantial evidence to support the verdict. *See Austin v. State*, 26 Ark. App. 70, 760 S.W.2d 76 (1988). Substantial evidence, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other; it must force or induce the mind to pass beyond suspicion or conjecture. *Ashe v. State*, 57 Ark. App. 99, 942 S.W.2d 267 (1997).

 In determining the sufficiency of the evidence, it is necessary to ascertain only the evidence favorable to the State, and it is permissible to consider only that testimony that supports a verdict of guilt, without weighing it against other evidence favorable to the accused. *See id.* Circumstantial evidence may constitute substantial evidence; when circumstantial evidence alone is relied upon, it must indicate the accused's guilt and exclude every other reasonable hypothesis. *Lindsey v. State*, 68 Ark. App. 70, 3 S.W.3d 346 (1999). Once the evidence is determined to be sufficient to go to the fact-finder, the question of whether the circumstantial evidence excludes any other hypothesis consistent with innocence is for the fact-finder to decide. *Ashe v. State, supra.*

 On review, it is the appellate court's job to determine if the evidence excludes every other reasonable hypothesis; it is only when circumstantial evidence leaves the finder of fact solely to speculation and conjecture that it is insufficient as a matter of

law. *Lindsey v. State, supra.* Resolution of conflicts in testimony and assessment of witness credibility is for the fact-finder. *Slater v. State, supra.*

"A person commits the offense of theft by receiving if he receives, retains, or disposes of stolen property of another person, knowing that it was stolen or having good reason to believe it was stolen." Ark. Code Ann. § 5-36-106(a) (Supp. 2003); *Slater v. State, supra.* "Receives" means acquiring possession, control, or title to the property or using the property as security. Ark. Code Ann. § 5-36-106(b) (Supp. 2003); *Smith v. State,* 34 Ark. App. 150, 806 S.W.2d 391 (1991). The unexplained possession or control by a person of recently stolen property or the acquisition by a person of property for a consideration known to be far below its reasonable value shall give rise to a presumption that he knows or believes that the property was stolen. Ark. Code Ann. § 5-36-106(c) (Supp. 2003).

Proof of actual possession is not necessary in order to establish theft by receiving; proof of constructive possession will suffice. *Smith v. State, supra.* A person constructively possesses property when he has the power and intent to control it. *Id.* A person may be found guilty of theft by receiving if he is knowingly in possession of stolen property, even without proof that he took the property himself or acquired it from the actual thief. *Slater v. State, supra; Fortson v. State,* 66 Ark. App. 225, 989 S.W.2d 553 (1999).

Relying on *King v. State,* 250 Ark. 523, 465 S.W.2d 712 (1971), appellant first asserts that, in order to convict him, the State must prove that the trailer belonged to Allen. However, as the State points out, *King* involved a possession of stolen property charge, a crime which involved an intent to deprive the true owner of the property.[1] In order to prove theft by receiving, the State does not have to prove a defendant intended to deprive the "true owner" of the property as was required to sustain a conviction for possession of stolen property. Thus, appellant's reliance on *King* is misplaced. The State is only required to prove that appellant received, retained, or disposed of this trailer, which was

---

[1] Possession of stolen property, Ark. Stat. Ann. § 41-3938 (Repl. 1964), is no longer a crime under Arkansas law.

owned by someone other than appellant, knowing it was stolen or having good reason to believe that it was stolen.

■ The State adequately met its burden in showing that this particular trailer had been stolen and that it belonged to Allen. That evidence included Allen's testimony that the trailer was in fact his and the identifying marks of Allen's trailer, such as the "bubble," the dent in the top of the trailer, the nose cone, and the drill holes found where Allen said they would be.[2] Further, Kerry Brown, Fairfield Bay Chief of Police, testified that he participated in the investigation. He testified that he impounded the trailer and inventoried it. Once the trailer was emptied, Fairfield Bay Police found a panel in the front of the trailer that was removed and painted with a serial number. The numbers seen on the panel were "30005." Allen testified that these numbers were from the VIN on the trailer and the numbers were placed on the panel by the manufacturer.

The question that remains is whether or not appellant knew or had good reason to believe that the trailer was stolen. Norman McElroy testified that appellant worked for him at the house construction site and that the trailer belonged to appellant, although McElroy might have pulled it there with his truck. McElroy testified that appellant told him that the trailer belonged to his brother Daron Doubleday.

Daron Doubleday, appellant's brother, testified at trial that he purchased the trailer in Conway "probably in October of 1999" for $1,200. When he purchased the trailer, Daron testified that it was stripped on the outside and was "in pretty rough shape." He testified that he put new tires on it and that he did not remember from whom he purchased the trailer and that he did not get a bill of sale from that person. He testified that the trailer was titled to his mother.[3]

---

[2] Although we only recognize the similarities between the trailer stolen and that found at the construction site, we do note that there were some dissimilarities between them, including Allen's testimony that somebody had spray-painted the magnesium wheels and had installed windows in the side of the panels, things that were not there prior to the theft.

[3] Although the registration for the trailer in question was listed as Defendant's Exhibit No. 1, it was not introduced at trial and is therefore not provided in the record.

Appellant contends that the State relied on the presumption of Ark. Code Ann. § 5-36-106(c) (Supp. 2003), which again sets forth that "[t]he unexplained possession or control by a person of recently stolen property or the acquisition by a person of property for a consideration known to be far below its reasonable value shall give rise to a presumption that he knows or believes that the property was stolen." We hold that the State does not receive the benefit of this presumption because Allen's trailer had not been recently stolen and because, even if the trailer was valued by Allen in excess of its purchase price, the evidence at trial gave no indication of its value a year and a half after it was stolen.

The license plate found on the trailer at the construction site did not belong to the trailer. Officer Taylor ran the license plate, which was registered to appellant; however, the plate was for a 1999 homemade black utility trailer.[4] The trailer to which the plate was attached was a manufactured white utility trailer.

Appellant testified on his own behalf that he, his brother, and his father all used the trailer and that he had no reason to believe that the trailer was stolen. He acknowledged that his boss brought the trailer to the job site where it was found. Prior to that, appellant testified that because the trailer was five times bigger than the Honda Civic he owned at the time, his brother pulled the trailer to the previous job site.

Further, appellant testified that on October 10, 2000, the day that the trailer was discovered by Officer Taylor, he checked the registration inside the trailer and learned that it did not match the tags on the trailer. Appellant explained that the registration matched the tags that he had for his double-axle trailer. He stated that he therefore went home and retrieved the other tags off the double-axle trailer and put them on the trailer in question. Appellant testified that he showed Police Chief Brown the registration and the tags that were supposed to be on the trailer and showed that it was not registered in his name. Nevertheless, appellant testified that he did not have a copy of the registration

---

[4] Unlike a manufactured utility trailer that is assigned an affixed VIN by its manufacturer, the Department of Finance and Administration (DFA) issues vehicle identification numbers for homemade trailers. DFA requires that the assigned number, which is embossed on a metal tab, be permanently affixed to the homemade trailer.

because it was not his trailer. Appellant acknowledged that, although he did not purchase the trailer, he did possess it.

 We conclude that the evidence presented undoubtedly indicated that the trailer belonged to someone other than appellant. Further, the evidence is sufficient to prove that appellant knew or had good reason to believe that the trailer was stolen. The license plate on the trailer was registered to appellant; however, it did not match the trailer. Appellant's explanation was that there had been some sort of mix-up. Neither the bill of sale nor the registration papers were introduced for this trailer. Certainly, the court, sitting as fact-finder, could conclude that the trailer in question belonged to someone other than the appellant and that appellant knew or had good reason to believe that the utility trailer in his possession had been stolen. The trial court was not required to believe appellant or his brother, *see Slater v. State, supra,* and the court must have determined that appellant's improbable explanation of the circumstances sufficiently established his guilt. *See Baughman v. State,* 353 Ark. 1, 110 S.W.3d 740 (2003) (holding that a defendant's improbable explanations of suspicious circumstances may be admissible as proof of guilt). Accordingly, viewing the evidence in the light most favorable to the State, considering only the evidence that supports the verdict, and giving due deference to the trial court's assessment of credibility as fact-finder, we affirm.

Affirmed.

STROUD, C.J., GLADWIN and CRABTREE, JJ., agree.

VAUGHT and ROAF, JJ., dissent.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this conviction because I do not believe there is sufficient evidence in this case as to whether Rodney Doubleday knew or had good reason to believe the trailer had been stolen. I agree with the majority that the State was not entitled to the statutory presumptions found in Ark. Code Ann. § 5-36-106(c) (Supp. 2003). However, while Doubleday's explanation that tags on the trailer were accidently switched need not be believed by the trier of fact, it is still a circumstantial evidence case, and simply having the wrong tags on a trailer does not exclude every other reasonable hypothesis than Doubleday knew or had reason to know the trailer was stolen. I also

cannot conclude that he has given an "improbable explanation" in this instance, as asserted in the majority opinion. It is a misdemeanor to display a license plate on a vehicle when the plate is not issued for that vehicle, *see* Ark. Code Ann. § 27-14-306 (Repl. 1994). However, while it is a transgression, it is certainly not a rare, unusual or "improbable" occurrence.

The longstanding rule in the use of circumstantial evidence is that the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused in order to be substantial. *Haynes v. State*, 354 Ark. 514, 127 S.W.3d 456 (2003). In *Haynes*, the supreme court quoted from *Bowie v. State*, 185 Ark. 834, 49 S.W.2d 1049 (1932), as follows:

> This demands that in a case depending upon circumstantial evidence the circumstances relied upon must be so connected and cogent as to show guilt to a moral certainty, and must exclude every other reasonable hypothesis than than of the guilt of the accused. Circumstances, however strong they may be, ought never to coerce the mind of the jury to a conclusion of guilt if they can be reconciled with the theory that one other than the defendant has committed the crime, or that no crime has been committed at all.

Once a trial court determines that the evidence is sufficient to go to the jury, the question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Haynes, supra.* Upon review, the appellate court determines whether the jury resorted to speculation and conjecture in reaching its verdict. *Id.* Two equally reasonable conclusions as to what occurred merely give rise to a suspicion of guilt. The appellate court will set aside a judgment based upon evidence that did not meet the required standards, and thus left the fact finder only to speculation and conjecture. *Id.* Overwhelming evidence of guilt is not required in cases based on circumstantial evidence; rather, the test is one of substantiality. *Edmond v. State*, 351 Ark. 495, 95 S.W.3d 789 (2003).

In this case, the majority can point to no evidence, circumstantial or otherwise, to support the conclusion that Doubleday had knowledge that the trailer was stolen other than that the license plate and the trailer did not match. This may be sufficient evidence to warrant a suspicion that Doubleday might have known or suspected that the trailer was stolen, but it hardly meets the test

of substantiality required to support this conviction. I would therefore reverse and dismiss this case.

VAUGHT, J., joins this dissent.