Robert WILLIAMS III *v.* STATE of Arkansas

CA CR 05-440                                           219 S.W.3d 676

Court of Appeals of Arkansas
Opinion delivered December 7, 2005

*William R. Simpson Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Arkansas Attorney General, by: *Brent P. Gasper*, Assistant Attorney General, for appellee.

SAM BIRD, Judge. Appellant Robert Williams III was convicted by a jury of multiple drug-related crimes and of theft by receiving property valued at less than $2500. In addition to being sentenced to terms of imprisonment for the drug-related crimes, he was also sentenced to five years' imprisonment for the theft-by-receiving conviction. As his sole point on appeal, Williams contends that the trial court erred in denying his motion for a directed verdict on the theft-by-receiving charge because the State failed to produce

substantial evidence that he knew the property was stolen or that he had good reason to believe that the property had been stolen. We affirm.

At trial, Sherrell Turner testified for the State that he was the owner of a Taurus revolver that he had reported stolen in December 2003. Turner said that he first noticed that the gun was missing in October 2003. Turner said that he was not aware of a break-in at his residence and that he did not know Williams. He also said that he never had any reason to give the gun to Williams. He claimed that his daughter had "several part-time jobs" and that she would occasionally bring some of her co-workers inside the house, unsupervised, while he was at work. He opined that these individuals "weren't upstanding citizens."

Gene Whitley of the North Little Rock Police Department also testified at trial. He said that he was working on the evening of February 25, 2004, and that he came into contact with Williams that night at a Citgo service station. He said that he had gone into the service station, had come back outside, and had gotten into his patrol car when he noticed that a girl "jumped out" of a small white vehicle and "took off pretty fast." According to Whitley, two other individuals got out of the car and started walking toward the girl. He said that he approached these individuals and asked whether the girl was okay, but they "just stared" at him. He said that he followed the girl and, once he found her, "she appeared to be okay." He then returned to the white vehicle and made contact with Williams.

Whitley testified that he initially asked Williams what was going on and said that Williams "just stared" and "didn't respond." He said that Williams was sitting in the driver's seat with one hand under his right leg and that Williams refused to show his hands. According to Whitley, Williams then turned around and told officers to "get away from him" and to "leave him alone." Whitley said that Williams then placed his left hand on the steering wheel but still refused to show his right hand. Whitley walked around to the passenger side of the vehicle and saw a black revolver in Williams's right hand. Whitley said that he "reached in" through the passenger door, which had been left open by the individuals who had previously exited the vehicle, and he took the gun from Williams. He said that the serial number on the gun matched the number on the one that Turner reported missing. He also said that he found drugs in Williams's possession.

At the close of the State's case-in-chief, defense counsel made the following motion for a directed verdict:

> At this time, Your Honor, I would make a motion for a directed verdict in that . . . I think there is reasonable doubt that . . . Mr. Williams produced or had the handgun in connection with the drugs; also, that he had reason to know or believe that the gun was stolen. And so for those reasons, I move for a directed verdict.

The trial court denied the motion. The defense rested, without presenting any evidence, and renewed its motion. The jury was instructed that, if it found Williams to be in unexplained possession or control of recently stolen property, it could consider that fact in deciding whether Williams knew or reasonably believed that the property was stolen.

A directed-verdict motion is a challenge to the sufficiency of the evidence. *Doubleday v. State*, 84 Ark. App. 194, 138 S.W.3d 112 (2003). In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *Lowry v. State*, 364 Ark. 6, 216 S.W.3d 101 (2005). We will affirm a conviction if substantial evidence exists to support it. *Id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.*

In order for circumstantial evidence to be sufficient, it must exclude every other reasonable hypothesis consistent with innocence. *Carter v. State*, 324 Ark. 395, 921 S.W.2d 924 (1996). That determination is a question of fact for the fact finder to determine. *Id.* However, the fact finder must not be left to speculation and conjecture in arriving at its conclusions on the matter. *Id.*

Arkansas Code Annotated section 5-36-106(a) (Supp. 2003) states that "[a] person commits the offense of theft by receiving if he or she receives, retains, or disposes of stolen property of another person, knowing that it was stolen or having good reason to believe that it was stolen." Under this statute, "receiving" means acquiring possession, control, or title or lending on the security of the property. Ark. Code Ann. § 5-36-106(b) (Supp. 2003). Furthermore, the unexplained possession or control by a person of recently stolen property shall give rise to a presumption that he or she knows or believes that the property was stolen. Ark. Code Ann. § 5-36-106(c) (Supp. 2003).

In support of his contention that the evidence is insufficient to support his conviction for theft by receiving, Williams argues that the only fact that would have allowed the jury to infer that he knew or had good reason to know that the revolver was stolen was that he possessed it approximately four months after it was discovered missing from Sherrell Turner's home. Citing cases from other jurisdictions, he apparently argues that a gap of four months between the time that the gun was discovered missing and the time that it was found in his possession was not "recent" for purposes of the presumption in Ark. Code Ann. § 5-36-106(c).

Williams also claims that the State never proved "any connection" between Turner and Williams or that Williams had ever been in Turner's house at any time. Furthermore, Williams asserts that the State never proved how he acquired the gun. Williams therefore urges this court to reverse his theft-by-receiving conviction on the basis that the evidence is insufficient to show that he knew or had good reason to know that the gun was stolen.

█ Viewing the evidence in the light most favorable to the State, as we are required to do, we find that substantial evidence supports Williams's conviction. Officer Whitley testified that he approached Williams while Williams was sitting in a parked vehicle in front of a service station and that, when Whitley asked Williams what he was doing, Williams did not respond. According to Whitley, Williams then told officers to "get away from him" and to "leave him alone." Whitley said that he subsequently discovered that Williams was concealing a black revolver in his right hand and that Whitley retrieved the gun from Williams. The gun matched the serial number of a black revolver that belonged to Sherrell Turner, who testified that he first noticed that the gun was missing in October 2003 — approximately four months before Williams was found with the gun. Williams was also found to be in possession of drugs.

Based on the foregoing, we hold that the evidence was sufficient to allow the jury to find — without resorting to speculation or conjecture — that Williams knew or had reason to believe that the gun was stolen because he was in unexplained possession of a gun that had been discovered missing four months earlier. In *Wiley v. State*, 92 Ark. 586, 124 S.W. 249 (1909), our supreme court recognized that the question of whether the theft of property was recent does not depend entirely upon the lapse of

time, but also on the nature of the property alleged to have been stolen; the actions of the defendant and the nature of his claim thereto, if he subsequently makes an assertion of title; and all the circumstances surrounding the particular case. The court in *Wiley* found that the possession of property by the defendant, following a time period of approximately three months from the date that the property was alleged to have been stolen, was "not too remote . . . to deprive it of its probative effect as a fact from which an inference of the guilt of the defendant could be drawn by the jury." *Id.* at 591, 124 S.W. at 251. On the other hand, this court has held that the lapse of fourteen months between the time that a trailer was stolen and the time that it was found in the defendant's possession was too remote to allow the statutory presumption of knowledge that it was stolen. *See Doubleday v. State*, 84 Ark. App. 194, 138 S.W.3d 112 (2003). Here, we conclude that a lapse of four months is not so great that we should hold, as a matter of law, that it could not be considered recent.[1]

The jury was entitled to find, as a matter of fact, that the gun had been "recently stolen" in this case, thus giving rise to the statutory presumption under Ark. Code Ann. § 5-36-106(c) that Williams had knowledge of the gun's status as stolen property. As the State points out, this presumption was never rebutted by Williams. We therefore hold that substantial evidence supports Williams's conviction for theft by receiving, and we affirm.

Affirmed.

ROBBINS and GRIFFEN, JJ., agree.

---

[1] For a survey of case law from other jurisdictions discussing what constitutes "recently" stolen property in similar cases, see *What Constitutes "Recently" Stolen Property Within Rule Inferring Guilt from Unexplained Possession of Such Property*, 89 A.L.R.3d 1202 (1979).