2012 Ark. App. 150

**Rebecca Mary TURNER, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–717.**

Court of Appeals of Arkansas.

Feb. 15, 2012.

Q. Byrum Hurst, Jr., Hot Springs, AR, for appellant.

Dustin McDaniel, Atty. Gen., by: Valerie Glover Fortner, for appellee.

DOUG MARTIN, Judge.

|₁The Garland County Circuit Court convicted appellant Rebecca Mary Turner of three counts of theft by receiving a credit or debit card; theft by receiving property valued in excess of $2,500; second-degree forgery; obstruction of governmental operations; and attempted theft of property valued below $500.[1] Turner was sentenced as a habitual offender to an aggregate term of thirty years' imprisonment. On appeal, Turner challenges only two of her convictions. She argues that there was insufficient evidence to support her convictions for theft by receiving with respect to a vehicle and second-degree forgery. Turner also contends that the trial court erred in ruling that her sentences run consecutively. We find no error and affirm.

## |₂I. The Guilt Phase

The series of events that gave rise to the facts of this case began on August 22, 2009, when Jacqueline (Jaci) Barden's purse and vehicle were stolen, and culminated with Turner's arrest at Walmart on August 28, 2009. At trial, Barden testified that, on August 22, 2009, she was shopping for school clothes with several of her children at Kohl's in Conway. Barden stated that she became distracted for "thirty seconds" and turned away from her purse. When Barden turned back, her zebra-print

---

1. Turner was initially charged with theft of property; however, the trial court reduced the charge to attempted theft of property. We note that the judgment and commitment order contains a scrivener's error in that it does not reflect that Turner was convicted of *attempted* theft of property.

purse was gone. Barden testified that she had "all forms of [her] financial means" in her purse that day, along with debit cards belonging to her children, as well as the children's social security cards and birth certificates needed for enrollment at school. Outside Kohl's, Barden's children saw the family's silver Ford Explorer leaving the parking lot. While Barden was speaking with police officers, one of Barden's older children went to an AT & T store that was in the strip mall with Kohl's and inquired about the GPS tracking system on Barden's cell phone, which was in Barden's stolen purse. According to an employee of AT & T, there had been recent activity on the phone, and the employee gave Barden a telephone number to a "Go Phone" that had been called. Barden first called her own cell phone number, entered her password, and listened to her voice-mail messages. Barden testified that one of the messages, from which she omitted the curse words when repeating, said: "G D M F, Rebecca Turner, you better call me back right now, and I mean it, G D." Barden then called the "Go Phone" number, and a man eventually answered, refused to identify himself, and claimed that he did not know anyone by the name of Rebecca Turner. According to the testimony, Barden later told Detective Scott Lampinen with the Hot Springs Police Department that someone had attempted to use her credit card at the 70 West Exxon in Hot Springs shortly after Barden's purse was stolen.

Annie Palmer testified that she was working at the 70 West Exxon station on August 23, 2009, when a woman driving what Palmer described as a gray Ford Explorer pulled into a parking space designated for handicapped individuals. Palmer testified that, although the woman was wearing a wig, she believed the woman was Rebecca Turner because Turner had, on previous occasions, written bad checks at the Exxon station and used credit cards that did not belong to her. Palmer testified that Turner attempted to purchase items with a credit card that was declined. Palmer asked for identification, and Turner explained that she had no identification because her purse had been stolen. Turner, however, produced a social security card, which Palmer testified matched the name on the credit card. Palmer then identified a credit card and social security card as those presented to her on August 23 and stated that she recognized them because the name was the same: "Jaci." Palmer was shown a picture of Turner that was taken at the time of her arrest on August 28, and Palmer testified that she recognized the hair because it was a wig. According to the testimony, Detective Lampinen later interviewed Palmer and learned that she had provided investigating officers with the license plate number of a vehicle matching the description of Barden's vehicle. The investigators had run the tags and discovered that the vehicle belonged to Barden.

Jason Stovall, who worked in loss prevention at Walmart, testified that he knew Turner from a previous encounter at Walmart when Turner had attempted to pass bad checks. On August 28, 2009, he observed Turner in the store and followed her over the course of three hours. Stovall testified that he saw Turner conceal over $300 worth of cosmetics in makeup bags, which she then added to her shopping cart full of merchandise. Turner took the merchandise to the checkout counter in the sporting goods section. The items were scanned by the cashier, and Stovall saw Turner hand the cashier a check. Before the transaction was complete, Turner began to walk away from the checkout counter and was immediately detained by a police officer.

Benjamin Riley, a patrol officer with the Hot Springs Police Department, responded to a call from a Walmart employee concerning a potential case involving shoplifting and forgery. When Officer Riley approached Turner in the sporting goods section, Turner told him that her name was Stephanie Phillips but that she had no identification with her. Officer Riley requested consent to search Turner's purse, to which she agreed. Officer Riley discovered credit cards and checks belonging to "Jaci Barden." Officer Riley testified that Turner told him she had arrived at Walmart in a silver vehicle and that a friend was waiting for her outside.

Lieutenant Craig Kirkland testified that he approached a silver 2005 Ford Explorer in the Walmart parking lot, and a man emerged from the vehicle and identified himself as Karon Mohammed. Lieutenant Kirkland testified that Mohammed had been behind the wheel of the vehicle and that the keys were in the ignition. When Lieutenant Kirkland ran the tags on the vehicle, he discovered that the vehicle had been reported stolen in Conway. Upon conducting an inventory of the vehicle's contents, Lieutenant Kirkland found an Arkansas driver's license belonging to Stephanie Phillips under a seat in the vehicle.

Detective Lampinen testified that he first made contact with Turner after she was arrested and brought to the police department. According to Detective Lampinen, Turner looked "quite a bit different" at trial than on the day of her arrest. Detective Lampinen identified several items from the purse in Turner's possession, including check number 1345, which listed the account holder as "Jaci Barden." According to Detective Lampinen, the check was not signed, dated, or paid to the order of anyone, but there was handwriting on the check reflecting telephone numbers, a date of birth, and an expiration date for a driver's license.

Turner testified that, on August 28, 2009, she called her friend Mohammed and asked for a ride to a friend's house. Turner said Mohammed pulled up in a silver Ford Explorer. According to Turner, Mohammed told her that he had some checks and credit cards and asked if she would like to try using them at Walmart. Turner testified that Mohammed handed her a purse and wallet and that she went inside Walmart while Mohammed waited in the vehicle. Turner testified that she was shopping and "[n]ext thing you know I tried giving the check and whenever I turned around there was a police officer behind me...." Turner testified that she identified herself as "Stephanie Phillips" because her parole officer was looking for her. Turner also stated that she was wearing a wig at the time of her arrest. Turner testified that she believed something was put in her drink at Sonic after she was picked up by Mohammed because she could remember only "bits and pieces" from the events leading to her arrest. Turner insisted that she had neither driven Barden's vehicle nor had the keys to it and that, in fact, she had never been to Conway.

The trial court denied Turner's motions to dismiss with respect to the two convictions Turner challenges on appeal. A motion to dismiss at a bench trial, like a motion for directed verdict at a jury trial, is considered a challenge to the sufficiency of the evidence. *Williams v. State*, 2010 Ark. App. 759, 2010 WL 4523758. This court will affirm the trial court's denial of a motion to dismiss if there is substantial evidence—evidence forceful enough to compel a conclusion one way or the other beyond suspicion and conjecture—to support the verdict. *Id.* The evidence can be direct or circumstantial. *Id.* On appeal,

the evidence is viewed in the light most favorable to the verdict, and only evidence supporting the verdict is considered. *Cora v. State*, 2009 Ark. App. 431, 319 S.W.3d 281. Assessment of witness credibility is the responsibility of the finder of fact. *Doubleday v. State*, 84 Ark.App. 194, 138 S.W.3d 112 (2003).

 Turner first contends that there was no substantial evidence supporting her conviction for theft by receiving with respect to Barden's vehicle. A person commits the offense of theft by receiving if she receives, retains, or disposes of stolen property of another person knowing that the property was stolen or having good reason to believe the property was stolen. Ark.Code Ann. § 5–36–106(a) (Repl.2006). Proof of actual possession is not necessary in order to establish theft by receiving; proof of constructive possession will suffice. *Smith v. State*, 34 Ark.App. 150, 806 S.W.2d 391 (1991). A person constructively possesses property when she has the power and intent to control it. *Id.* A person may be found guilty of theft by receiving if she is knowingly in possession of stolen property, even without proof that she took the property herself or acquired it from the actual thief. *Doubleday, supra.* The unexplained possession or control of recently stolen property gives rise to a presumption that the person knows or believes that the property was stolen. Ark.Code Ann. § 5–36–106(c). If possession |₇of the stolen property is not satisfactorily explained to the trier of fact, such possession is sufficient to sustain a conviction of theft by receiving. *Wilson v. State*, 10 Ark.App. 176, 662 S.W.2d 204 (1983).

 Turner argues that there was no evidence that she was ever in actual possession of Barden's vehicle. Rather, she insists that she was only a passenger in the vehicle. Turner contends that there was "not one shred of evidence" that she

participated in the theft of Barden's vehicle or that she had "any inkling" that the vehicle might have been stolen. The following evidence, however, was before the trier of fact. Barden's vehicle was stolen at the same time her purse was stolen, and the purse contained the keys to Barden's vehicle. The purse also contained Barden's cell phone, which relayed an angry message identifying Turner as the holder of the cell phone shortly after the police arrived to investigate the theft of Barden's purse and vehicle. Palmer identified Turner as the driver of Barden's vehicle at the Exxon station only hours after it was stolen. Turner identified herself as "Stephanie Phillips" when she was confronted by Officer Riley at Walmart only five or six days after Barden's vehicle was stolen, and a driver's license bearing the name "Stephanie Phillips" was found under a seat in Barden's vehicle.

 This evidence is sufficient to show that Turner both actually and constructively possessed Barden's recently stolen vehicle, which triggered the statutory presumption that Turner knew or had reason to believe the vehicle was stolen. Turner argues that, because she admitted committing several criminal offenses, this court should believe her when she says she had no knowledge that the vehicle was stolen. This court, however, does not determine the credibility of witnesses, and the trial court apparently did not believe Turner's explanation |₈about her possession or control of the stolen vehicle. The trier of fact is not required to believe the testimony of a criminal defendant, who is the person most interested in the outcome of the proceeding. *Zones v. State*, 287 Ark. 483, 702 S.W.2d 1 (1985).

 Turner also contends that this court should infer that Mohammed would not have testified favorably for the State,

given that the State failed to call Mohammed to testify. At no time did Turner request such relief in the form of an adverse inference before the trial court; thus, there is no ruling for this court to review. This court will not address an argument that is raised for the first time on appeal. *Stansell v. State,* 2011 Ark. App. 670, 2011 WL 5429589.

We hold that there was substantial evidence to support Turner's conviction for theft by receiving in that Turner possessed Barden's vehicle and either knew or had good reason to believe it was stolen. Therefore, we affirm on this point.

■■■■ Next, Turner argues that the State failed to prove she forged a check at Walmart. A person forges a written instrument if, with purpose to defraud, the person makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act. Ark.Code Ann. § 5–37–201(a) (Repl.2006). A person commits forgery in the second degree if she forges a written instrument that is a check. Ark.Code Ann. § 5–37–201(c)(1). "Utter," as used in section 5–37–201(a), includes the delivery or attempted delivery of a written instrument. *Ruffin v. State,* 83 Ark.App. 44, 115 S.W.3d 814 (2003) (holding that the evidence supported the appellant's conviction for first-degree forgery, even though the appellant did not draft a check that was issued by the State of Arkansas to the appellant's stepfather, because the appellant presented the check to motel clerks while purporting to have permission from his stepfather to rent a room with funds from the check). Intent can seldom be proved by direct evidence and must be inferred from facts and circumstances. *Johnson v. State,* 2011 Ark. App. 718, 2011 WL 5974286. The fact-finder need not lay aside its common sense in evaluating the ordinary affairs of life and may infer a defendant's guilt from improbable explanations of incriminating conduct. *Id.*

■■■■ Turner maintains that she did not commit second-degree forgery because check number 1345 was not filled out and signed. The evidence, however, showed that Turner both possessed and uttered the check. Turner asserts that she did not hand the check to the cashier at Walmart, but Stovall and Officer Riley specifically testified that they saw Turner present the check for payment. Indeed, Turner testified that she "tried giving the check" to the cashier at Walmart. Accordingly, Turner's attempt to pass the check completed her commission of second-degree forgery. *See McGirt v. State,* 289 Ark. 7, 708 S.W.2d 620 (1986).

■■■■ Turner also argues, "In truth, the evidence actually shows that Ms. Turner decided not to complete the Wal–Mart purchase and was in the process of walking away from the checkout when she was detained by Mr. Stovall." Turner asserts that, therefore, there was no "purpose to defraud." The trial court obviously believed Turner's presenting a check at Walmart that she knew she was not authorized to use in exchange for merchandise was sufficient evidence that Turner's purpose was to defraud. We agree.

■■■■ Further, Turner contends that the trial court could not reasonably infer that the check was forged because Barden testified that she had already closed the checking account. This argument, however, was not made to the trial court. We decline to address the merits of this argument for the first time on appeal. *Stansell, supra.* To the extent that Turner's arguments with respect to second-degree forgery are preserved, we hold that

substantial evidence supports her conviction.

## II. *The Sentencing Phase*

Following Turner's convictions, the trial court heard victim-impact testimony from Barden. Barden testified that she was a single mother of four children and was fostering a fifth child from an abusive household. She was a full-time student and worked part time. Barden testified that she did not live "above her means" and had a budget. Barden had to borrow money for groceries and utilities while her finances were tied up with the identity theft. Barden and two of her older children had to close their bank accounts and open new ones and had to cancel all existing credit and debit cards in their names. Barden paid for a new driver's license for herself, new social security cards for her and her children, and birth certificates for her children. Barden paid to have new locks installed on her home and her post office box. Barden could not write a check at Walmart and Walgreens. Barden's credit was ruined, and she was still receiving collection notices at the time of trial. Barden's mother paid $122 to get Barden's vehicle out of the impound lot. Her vehicle was damaged after it was stolen, and Barden paid a $500 deductible to have the vehicle repaired. Barden could not rent a car without a credit card, so she borrowed a car from a family member. Barden said she lived in fear of being embarrassed every time she wrote a check and was too scared to carry cash. Barden worried that someone was coming after her and her children, and she sought treatment for depression and anxiety over this incident.

The State then submitted judgment and commitment orders documenting Turner's twelve prior felony convictions to prove Turner's status as a habitual offender. The State then rested, and the defense called Turner back to the stand to testify.

Turner stated that she was at the Department of Correction serving time for violating a suspended sentence. She said that she had been "stipulated" by the parole board, which meant she had to complete a prerelease class and was given "tons" of requirements, involving community service, curfew, employment or education, drug screening, restitution (if any), and maximum supervision for thirty days. Turner stated that she must also complete a drug-and-alcohol program. Turner's family had paid $600 for her enrollment at Sobriety Living Center in Pine Bluff. Turner testified that the center's representatives had attended court on her behalf. Turner testified that all of her prior felony convictions involved drugs and forgery and that she had never been charged with a violent offense. Turner testified that she had an eight-year-old daughter but did not have legal custody of the child and that she had been out of prison for only two years of her daughter's life. Turner was asked if she had anything to say to Barden, and Turner replied, "I don't know what to say about that. I know that I wasn't the one that took her stuff. But I do feel sorry for [Barden] for her situation that she's going through and the circumstances."

The judge sentenced Turner to ten years' imprisonment on each theft-by-receiving conviction with respect to the credit and debit cards, with those sentences running concurrently to each other; ten years' imprisonment on the conviction for second-degree forgery; and ten years' imprisonment for theft by receiving with respect to Barden's vehicle. The judge ordered those sentences to run consecutively for an aggregate term of thirty years' imprisonment. With respect to the misdemeanor convictions for obstructing gov-

ernmental operations and attempted theft of property valued below $500, the judge sentenced Turner to thirty days at the Garland County Detention Center with credit for time served.

Turner maintains that thirty years' imprisonment is an "exceptionally severe" sentence for her nonviolent offenses. Turner cites Arkansas Code Annotated section 5–4–403 (Repl.2006), which provides:

> When multiple sentences of imprisonment are imposed on a defendant convicted of more than one offense, including an offense for which a previous suspension or probation has been revoked, the sentences shall run concurrently unless, upon recommendation of the jury or the court's own motion, the court orders the sentences to run consecutively.

Turner argues that "[o]ur statute uses the word 'shall', meaning concurrent terms are mandatory yet the decisions of our appellate courts have never read it that way, instead taking the tack that the statute gives the Circuit Court almost unbridled discretion." In making this argument, Turner's counsel completely ignores the plain language of the statute, namely, the word "unless."

It is well established that the question of whether sentences run consec-

utively or concurrently lies solely within the province of the trial court. *Throneberry v. State*, 2009 Ark. 507, 342 S.W.3d 269. The exercise of that discretion will not be altered on appeal unless it is clearly shown to have been abused. *Id.* If a sentence is within the limits set by the legislature, it will be upheld even if it could be considered unduly harsh. *Williams v. State*, 320 Ark. 498, 898 S.W.2d 38 (1995). Turner was convicted of four Class C felonies and one Class B felony, and therefore faced a maximum sentence of 160 years' imprisonment as a habitual offender. *See* Ark. Code Ann. § 5–4–501(b)(2)(C), (D) (Repl. 2006).[2] Accordingly, Turner's sentence of thirty years' imprisonment is within the statutory limits and will be upheld. Further, we hold that the trial court did not abuse its discretion in ordering Turner's sentences to run consecutively. The trial court could have reasonably concluded that Turner's commission of five new felonies warranted consecutive sentences, given that the sentences she had received on the previous twelve felonies had apparently not served to deter her criminal conduct.

Turner raises several other arguments with regard to sentencing that are not preserved for appellate review.[3] We have repeatedly held that arguments not raised below cannot be asserted for the first time

---

**2.** Theft by receiving a credit or debit card is a Class C felony. Ark.Code Ann. § 5–36–106(e)(2)(B). Second-degree forgery is also a Class C felony. Ark.Code Ann. § 5–37–201(e). Theft by receiving is a Class B felony if the value of the property is $2,500 or more. Ark.Code Ann. § 5–36–106(e)(1). For a Class C felony, the extended term of imprisonment for a defendant who has previously been convicted of four or more felonies is a term of imprisonment of not less than three nor more than thirty years for each conviction. Ark. Code Ann. § 5–4–501(b)(2)(D). For a Class B felony, the extended term is not less than five nor more than forty years. Ark.Code Ann. § 5–4–501(b)(2)(C).

**3.** Turner compares Arkansas Code Annotated section 5–4–403 to its federal counterpart, 18 U.S.C. § 3584, and complains that the state statute does not provide "a laundry list of factors" to consider in determining whether to run sentences consecutively. Turner asks this court to consider Act 570 of 2011, even though it admittedly does not apply here, given that it had not been enacted at the time Turner committed her most recent crimes. Also, Turner contends that the trial court should have considered the Pew Report, a study that defense counsel referenced but did not introduce into evidence.

on appeal. *Frye v. State,* 2009 Ark. 110, 313 S.W.3d 10. Further, we do not reach the merits of an argument that was not fully developed below. *Eastin v. State,* 370 Ark. 10, 257 S.W.3d 58 (2007). Moreover, it is an appellant's burden to obtain a clear ruling on an issue from the trial court. *Dixon v. State,* 2011 Ark. 450, 385 S.W.3d 164. Absent such a ruling, there is nothing for this court to review. *Id.*

Affirmed.

GRUBER and BROWN, JJ., agree.