Cite as 2020 Ark. 415
# SUPREME COURT OF ARKANSAS
No. CR-20-292

| | | |
|---|---|---|
| | | **Opinion Delivered:** December 10, 2020 |
| STATE OF ARKANSAS | | |
| | APPELLANT | APPEAL FROM THE SCOTT COUNTY CIRCUIT COURT |
| V. | | [NOS. 64CR-19-171, 172 & 173] |
| JERRY HIGGINBOTHAM | | HONORABLE JERRY RAMEY, JUDGE |
| | APPELLEE | REVERSED AND REMANDED. |

**SHAWN A. WOMACK, Associate Justice**

The State of Arkansas brings this appeal pursuant to Arkansas Rule of Appellate Procedure–Criminal 3 and contends that the Scott County Circuit Court erred in dismissing charges against appellee Jerry Higginbotham based on a speedy-trial violation. For reversal, the State argues the circuit court misinterpreted Article III(a) of the Interstate Agreement on Detainers (IAD), codified at Ark. Code Ann. § 16-95-101 (Repl. 2016), to find Higginbotham had not been brought to trial within the time period prescribed by statute. We reverse and remand.

## I. *Background*

On September 18, 2017, Deputy Jonathan Woodward of the Scott County Sheriff's Department discovered an abandoned vehicle while patrolling on Manorcrest Road in Waldron. The vehicle belonged to Ronald Goodwin and had been stolen from his residence

during an apparent burglary. Three days later, the sheriff's department responded to a residential burglary on the same road involving the theft of a pickup truck. The vehicle was later entered into the National Crime Information Center (NCIC) database as stolen. Chief Deputy Billy Carnahan was informed by the Waldron Police Department that Higginbotham had been arrested on September 18 after being seen attempting to break into a vehicle and that he had been bonded out of jail on September 19. Based on this information, Higginbotham was named as a potential suspect in the investigation into the burglaries. After speaking with the family of Higginbotham's girlfriend, Adrianna Ingle, the deputies learned Higginbotham picked up Ingle in a truck on September 21 and had not been heard from since. Higginbotham's grandfather told deputies he might have gone to his previous home in the Houston, Texas, area.

Carnahan received a report by Officer Robert Smith of the Houston Metro Police Department on September 24, 2017. In the report, Smith stated he encountered two individuals asleep beside a truck in a parking garage. The couple identified themselves as Higginbotham and Ingle. When Smith returned to his vehicle to check their information, he discovered the truck had been flagged in the NCIC database as stolen. While Smith was communicating with dispatch, Higginbotham and Ingle got into the truck and fled. They were arrested the next day by the Harris County Sheriff's Department in possession of the stolen truck. Upon learning of Higginbotham's arrest, Carnahan contacted the Harris County jail to request photographs of the soles of Higginbotham's shoes. The soles matched

2

shoe impressions discovered at the burglarized homes in Waldron. Scott County issued warrants for Higginbotham's arrest on September 26, 2017.

Higginbotham was convicted in Texas of the offense of escape while arrested or confined and sentenced to two years' imprisonment. Scott County subsequently filed a detainer with the Texas Department of Criminal Justice based on the outstanding warrants. In March 2018, a Texas official sent the Scott County Sheriff's Department notice of Higginbotham's place of imprisonment and his request for a final disposition to be made of all untried indictments, informations, or complaints that had been lodged against him pursuant to Article III(a) of the IAD. The notice and request for final disposition were filed in the Scott County Circuit Court on March 22, 2018.

On September 27, 2019, Higginbotham's term of imprisonment in Texas expired. He was served with the outstanding Scott County arrest warrants on September 30. On October 8, criminal informations were filed in the circuit court, charging Higginbotham with residential burglary and theft of property with a value greater than $25,000 in Case No. 64CR-19-171; breaking or entering and first-degree criminal mischief in Case No. 64CR-19-172; and residential burglary, theft of property with a value less than $25,000 but greater than $5,000, theft of property involving a firearm with a value less than $2,500, breaking or entering, and first-degree criminal mischief in Case No. 64CR-19-173.

Higginbotham filed in the circuit court a motion to dismiss with prejudice all pending criminal actions on December 5, 2019. He argued he had not been brought to trial within 180 days of March 22, 2018––the date his notice and request for final disposition were filed–

3

–in violation of the IAD's speedy-trial provision. The circuit court held a hearing on the motion on January 7 and February 10, 2020. At the hearing, the State argued the 180-day limitation for trial under the IAD was inapplicable in Higginbotham's case because the detainer filed with the Texas Department of Criminal Justice was not based on any pending indictment or information. It claimed the IAD speedy-trial provision could not have been triggered until October 8, 2019, when the criminal informations were filed. Nevertheless, the circuit court concluded that because Higginbotham filed his notice and request for final disposition with Scott County, the IAD's speedy-trial provision applied. Because Higginbotham was not brought to trial within 180 days of his request for disposition, the circuit court entered an order dismissing all pending charges with prejudice.[1] The State appeals.

As this appeal is brought by the State, we must first determine whether this is a proper State appeal. Unlike that of a criminal defendant, the State's right to appeal is limited to the provisions of Rule 3 of the Arkansas Rules of Appellate Procedure–Criminal. *State v. Ledwell*, 2017 Ark. 252, 526 S.W.3d 1. We will not consider an appeal by the State unless the correct and uniform administration of the criminal law requires review by the court. Ark. R. App. P.–Crim. 3(d); *State v. McWilliams*, 2017 Ark. 307, 529 S.W.3d 238. As a matter of practice,

---

[1]In his motion, Higginbotham also requested dismissal of the aggravated-assault charge in Case No. 64CR-17-63. Higginbotham was served with the arrest warrant for this offense on June 22, 2017, but the charge was later nolle prossed on May 1, 2018. The circuit court included the charge in its order granting Higginbotham's motion to dismiss; however, the order was not entered for the case. Case No. 64CR-17-63 is not at issue in this appeal.

this court has only taken appeals "which are narrow in scope and involve the interpretation of law." *State v. Gray*, 2016 Ark. 411, at 5, 505 S.W.3d 160, 163 (quoting *State v. Brashers*, 2015 Ark. 236, at 5, 463 S.W.3d 710, 712). We do not permit State appeals merely to demonstrate the fact that the circuit court erred. *Id.*

The State contends the issue presented in this case involves interpreting the IAD's speedy trial provision and when that provision is triggered. This issue requires only narrow statutory interpretation and does not turn on particular facts. *See State v. Coble*, 2016 Ark. 114, 487 S.W.3d 370. Our decision in this appeal will have widespread application and is necessary for the criminal law's correct and uniform administration. *See id.* As such, this appeal is properly before this court.

We review issues of statutory interpretation de novo, as it is for this court to decide the meaning of a statute. *Newman v. State*, 2011 Ark. 112, 380 S.W.3d 395. Criminal statutes are construed strictly, resolving any doubts in favor of the defendant. *Id.* We also adhere to the basic rule of statutory construction, which is to give effect to the intent of the legislature. *Thompson v. State*, 2014 Ark. 413, 464 S.W.3d 111. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language, and if the language of the statute is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion to resort to the rules of statutory interpretation. *Id.*

The IAD is a compact among forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the United States. *Cunningham v. State*, 341 Ark. 99, 102, 14 S.W.3d 869, 871 (2000). The Agreement is a congressionally sanctioned interstate compact within

5

the Compact Clause, U.S. Const. art. I, section 10, cl. 3, and thus subject to federal construction. *See Cuyler v. Adams*, 449 U.S. 433, 438–42 (1981). The Supreme Court has stated that the purpose of the IAD is "to encourage the expeditious and orderly disposition of [outstanding] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." *Carchman v. Nash*, 473 U.S. 716, 720 (1985). To achieve this end, Article III(a) requires a prisoner to be brought to trial within 180 days after authorities receive notice and request for final disposition.

Specifically, Article III provides in pertinent part:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state *any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner*, he or she shall be brought to trial within one hundred eighty (180) days after he or she shall have caused to be delivered to the prosecuting officer's jurisdiction written notice of the place of his or her imprisonment and his or her request for a final disposition to be made of the indictment, information, or complaint . . . .

Ark. Code Ann. § 16-95-101, art. III(a) (emphasis added). Article V(c) of the IAD requires dismissal of outstanding criminal charges in the event a prisoner is not tried within 180 days of authorities' receipt of the request for final disposition. *See* Ark. Code Ann. § 16-95-101, art. V(c).

By its express terms, the IAD's speedy-trial provision in Article III(a) applies only to a detainer based on an untried indictment, information, or complaint. *Padilla v. State*, 279 Ark. 100, 103, 648 S.W.2d 797, 798 (1983). A prisoner cannot formally invoke Article III when there is no untried pending indictment, information, or complaint. *See United States*

6

*v. Arhebamen*, No. 02-CR-80761, 2003 U.S. Dist. LEXIS 26617, at *11–12 (E.D. Mich. June 18, 2003); *see also United States v. Sanders*, 669 F.2d 609, 611 (9th Cir. 1982) (noting Article III requires dismissal only of untried indictments, informations, or complaints that are "pending" at the time the detainer is filed). Thus, the plain and unambiguous language of the Agreement leads us to conclude Article III(a) cannot apply in the absence of an untried pending indictment, information, or complaint.

Here, the parties do not dispute that Higginbotham followed the proper notification guidelines set out in Article III or that his request for final disposition was filed in Scott County on March 22, 2018. The State instead renews its argument made below––that the IAD's speedy-trial provision was not invoked on March 22, 2018, because there were no pending charges in Cases Nos. 64CR-19-171, 64CR-19-172, or 64CR-19-173 on that date. Rather, it asserts the 180-day period could not be triggered until October 8, 2019, when the criminal informations were filed for those cases.

In finding the IAD applied in Higginbotham's case, the circuit court relied upon the detainer lodged by the Scott County Sheriff's Department for the above-referenced felony cases. This detainer was ostensibly based upon the outstanding warrants in Scott County.[2] Therefore, the question becomes whether Article III's speedy-trial provision can be triggered by a detainer predicated on an arrest warrant. As discussed, a detainer must be lodged against a prisoner based on a pending untried indictment, information, or complaint for the terms

---

[2]The detainer was not included in the case record.

7

of the IAD to apply. In *Carchman*, the Supreme Court found the words "indictment," "information," and "complaint" refer to the documents charging an individual with having committed a criminal offense. 473 U.S. at 724. When construing Article III(a), other jurisdictions have stated a bench warrant is not an untried indictment, information, or complaint. *See, e.g., Locklear v. Commonwealth*, 376 S.E.2d 793 (Va. Ct. App. 1989). In *State v. Carlton*, 583 S.E.2d 1 (Ga. 2003), the court held an arrest warrant, in and of itself, is insufficient to invoke the IAD's speedy-trial protections. *See also United States v. Bottoms*, 755 F.2d 1349 (9th Cir. 1985); *Crawford v. State*, 669 N.E.2d 141 (Ind. 1996); *Blakey v. Dist. Court*, 755 P.2d 1380 (Mont. 1988); *In re Ryan*, No. 10-04-00128-CR, 2004 Tex. App. LEXIS 9393, 2004 WL 2365239 (Tex. App. Oct. 20, 2004) (per curiam). We find this view aligns with our standards for statutory interpretation. Article III clearly conveys that a pending untried indictment, information, or complaint must serve as the basis for a detainer to invoke the 180-day period. This court would be amending the statute to permit an arrest warrant to trigger the IAD's protections. Accordingly, we hold a detainer, unless based upon an untried indictment, information or complaint, will not trigger application of the IAD.

The record here does not reflect Scott County filed any formal charges in Cases Nos. 64CR-19-171, 64CR-19-172, or 64CR-19-173 while Higginbotham was incarcerated in Texas. In those cases, the criminal informations were not filed until October 8, 2019, following Higginbotham's release from prison. Therefore, the detainer lodged by the sheriff's department was not based on an untried information pending in Scott County. Higginbotham could not have availed himself of Article III(a)'s 180-day speedy-trial provision

8

or the Agreement's relevant dismissal provisions. Consequently, the circuit court erred in finding the necessary conditions for implementation of the IAD had been met and that the above-styled cases had not been timely adjudicated. Because the circuit court erred in granting Higginbotham's motion to dismiss, we reverse and remand for further proceedings.

Reversed and remanded.

*Leslie Rutledge*, Att'y Gen., by: *Rachel Kemp*, Sr. Ass't Att'y Gen., for appellant.

One brief only.